MARY A. WOODGATE, Individually and as Executrix, etc., et al., Respondents, *v.* MELANCTHON FLEET et al., Appellants.

The validity of a trust to receive and apply the rents and profits of land, the duration of which cannot extend beyond the lives of two designated persons, in being at the time of the creation of the trust, is not impaired by the circumstance that during the authorized period of suspension of the power of alienation, more than two persons are to enjoy the benefits of the income, or that some of the designated beneficiaries are not *in esse* at the time of the creation of the trust.

F. conveyed certain premises to trustees in trust: (1) to receive the rents and profits and apply to the support of his wife M., of J., and of any children of himself and M., thereafter born; (2) upon the arrival of J. at the age of twenty-one, to convey to him and to M., if unmarried, their proportions, to be determined by the number of children then living, the declared intent being to divide the property equally between M., J., and the living children; in case of the death of either, the share to which such person would have been entitled to go to the survivors; (3) if M. should be married when J. became of age, the trust as to her share to continue during her husband's life, and in case she should not survive her husband, her share to be vested in her heirs; (4) the shares of the after-born children to be held for them until they respectively arrived at full age. When J. became of age M. and four children were living. In an action to determine the rights of the parties, *held*, that the first trust and the limitation of the remainder in fee to take effect on J.'s becoming of age were valid, as was also the trust to continue during the life of M.; that the clause making provision in case of the death of one of the beneficiaries referred to a death before the division; that the concluding provision did not create an active trust, authorized by the Revised Statutes, but a mere passive trust under which the title passed directly to the beneficiaries; also, that even if the language could be construed as creating a trust void because of an unauthorized suspension of the power of alienation, it did not defeat the estate limited to the grantor's children.

(Argued March 30, 1876; decided April 11, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court at Special Term.

This action was brought to determine the rights and equities of the various parties in and to certain real estate situate in Jamaica, Queens county.

On March 24, 1834, Abraham Fleet, being married and

having an adopted son or "reputed son," as he was styled, executed a trust deed conveying certain lands, including the premises in question, to James H. Hackett and others, in trust, for the purposes declared in said deed as follows:

"To have and to hold the said hereby granted and conveyed premises, unto the said parties of the second part, and to the survivors or survivor of them forever. In trust, nevertheless, and for the use and purposes hereinafter specified and described, that is to say, to receive all the rents, issues and profits of all the said property and estate hereinbefore mentioned and described, and the same to apply in equal proportions toward the support and maintenance of Martha, the wife of the said party of the first part, and the support and education of John K. Fleet, his said reputed son, and of any children of the said party of the first part that may hereafter be born of his said wife, with power to invest whatever moneys may remain in the hands of the said parties of the second part, over and above what may be required for the said purposes in good and profitable securities for the benefit of said wife and children; and in trust, further, upon the arrival of the said John K. Fleet at the age of twenty-one years, to convey to him and the said Martha (provided she shall be then sole and unmarried), their respective proportions of the said estate, or all the right, title and interest of the said party of the first part, of, in and to the several lands and premises hereinbefore mentioned and described, such proportions to be determined by the number of children of the said party of the first part, and his said wife, which shall be living at the time the said John K. Fleet shall arrive at twenty-one years of age. The express intention of said party of the first part, that all the said hereinbefore described property shall go to and be divided among the said Martha, John K., and all lawful children of the said party of the first part, which shall be living at the time the said John K. shall arrive at age, in equal proportions, share and share alike.

"And further, that in the event of the decease of the said Martha, John K., or either of the said children, the share to

which said party would have been entitled shall be equally divided among the survivors. And it is further provided, that if upon the arrival of the said John K. at the age of twenty-one years, the said Martha shall not be living, sole and unmarried, her share or proportion shall continue to be held by the said parties of the second part, their survivors or survivor, in trust, for her and her benefit so long as her husband shall survive, and as such trustees the said parties of the second part shall account with her and pay over to her from time to time such moneys as she may require for her comfortable support and maintenance ; and in case she shall not survive her said husband, her share or proportion of the said estate shall be vested in her heirs. And further, that *the shares* of the said children as may be hereafter born as aforesaid, shall be held in trust for them by the said parties of the second part, until said children shall arrive at lawful maturity; and in trust, further, that if at any time before the said John K. shall arrive at age, it shall, in the judgment of the said parties of the second part, become necessary, they shall have the power to sell and convey the said estate hereby conveyed to them, in trust, or any part thereof, and to execute the necessary deeds of conveyance therefor, and the proceeds of such sale to apply for the benefit of the several parties for whose benefit this trust is created, in manner as is above mentioned and provided."

On the 21st October, 1837, John H. Wingate, plaintiff's testator, obtained a judgment against said grantor, and his interest in the premises in question was sold upon execution issued on said judgment and bid off by Wingate, who received a sheriff's deed. He commenced an action of ejectment, and the *cestui que trust* filed a bill in chancery to determine the validity of the trust deed. The assistant vice-chancellor held the deed to be valid so far as it made provision for the lives of Martha E. and John K. Fleet, but void as to the residue. John K. Fleet and wife, on the 16th February, 1853, conveyed all their interest in the premises to Woodgate.

This action was commenced in 1855. The wife of the grantor and the children were not originally made parties. Judgment was rendered declaring, in substance, that the trusts for the benefit of the children were void; that the grantor retained the interests not legally conveyed, and that Woodgate acquired under the sheriff's deed the interests attempted to be conveyed to the children. The judgment was reversed by the Commission of Appeals (44 N. Y., 14). Afterward the said four children were made parties defendant. The judgment below was to the effect that the trusts for the benefit of the children were void, and that they had no interest in the property.

*Wm. H. Onderdonk* for the appellants. The trusts created by the deed were valid. (1 R. S., 723, §§ 14, 15; 728, § 55; 729, §§ 60, 61; *Williams* v. *Williams*, 4 Seld., 536, 537; *Harrison* v. *Harrison*, 36 N. Y., 543; *Manice* v. *Manice*, 43 id., 303; *Bradley* v. *Amidon*, 10 Paige, 288; *Savage* v. *Burnham*, 17 N. Y., 561; *Gilman* v. *Reddington*, 24 id., 9; *Post* v. *Hover*, 33 id., 600; 2 Jar. on Wills [3d ed.], 56; *Woodgate* v. *Fleet*, 44 N. Y., 12, 13.) The trusts in favor of the children to be born after the execution of the instrument, did not unduly suspend the power of alienation. (1 R. S., 728, § 55; 729, § 58; *Downing* v. *Marshall*, 23 N. Y., 366; *Post* v. *Hover*, 33 id., 593; *Schetler* v. *Smith*, 41 id., 328; *Kiah* v. *Grenier*, 56 id., 220.)

*Dennis McMahon* for the respondents. The trusts in the deed, so far as regards the after-born children, were invalid. (11 Abb. Pr. [N. S.], 52–54; 44 N. Y., 17; 1 R. S. [o. p.], 729, 730.) The deed suspended the power of alienation unduly. (1 R. S. [o. p.], 723, § 14; *McSorley* v. *McSorley*, 4 Sand. Ch., 414; *Lange* v. *Rapke*, 5 id., 363; *Root* v. *Stuyvesant*, 18 Wend., 257; *Parks* v. *Parks*, 9 Paige, 107; *More* v. *Lettell*, 2 Hand, 76; *Sheriden* v. *House*, 4 Keyes, 589; *Paine* v. *Reall*, 4 Den., 405; *Burton* v. *Smith*, 13 Pet., 464; *Hawley* v. *James*, 16 Wend., 62; 41 N. Y., 334; *Kilpatrick* v. *Johnson*,

43 id., 376; *Haxton* v. *Corse*, 2 B. Ch., 518; *Lorrillard* v. *Costar*, 5 Paige, 195; *Bascom* v. *Albertson*, 34 N. Y., 596; *Post* v. *Hover*, 33 id., 593; *Vernon* v. *Vernon*, 53 id., 357; 2 Bl. Com., 174, note 21; 2 Lom. Dig., 311; 2 Wash. R. P., 357; *Long* v. *Blackall*, 7 L. R., 100; Fearn. Rem., 429 note *f.*, 414, note *a*, 526, 530; *Cadell* v. *Palmer*, 10 Bing., 140; *Pleasants* v. *Pleasants*, 2 Call., 336; *Earle* v. *Wilson*, 17 Ves., 528; *Gordan* v. *Gordan*, 1 Merw., 150–153; *Metham* v. *Devon*, 1 P. Wms., 529; 2 Lan. Exrs., 35; *Corbet's Case*, 1 Coke, 87 *a*; *Jermyn* v. *Ancot*, 1 Coe, 85 *a*; *Lade* v. *Halford*, 3 Burr., 1416; W. Bl., 428; 1 Amb., 479; 1 Theo. Co. Litt., 506; 1 Prest. Ex., 257, 258; Haiger's L. Tr., 519; *Beauclesh* v. *Denner*, 2 Ath., 308; *Deel* v. *Fonnasau*, 2 Doug., 487; *Thompson* v. *Guffert*, 1 Leigh [Va.], 321; *Reddick* v. *Cahoon*, 4 Rand., 547; *Tensley* v. *Jones*, 13 Grat., 289; *Callis* v. *Kemp*, 11 id., 85; *Bells* v. *Gillespie*, 5 Rand. [Va.], 279; *Bap. Assn.* v. *Hart's Ex.*, 4 Wh., 1; *Gallego* v. *Atty.-Genl.*, 3 Leigh, 450; *Wheeler* v. *Smith*, 9 How., 80; *Ganey* v. *Latant*, 4 Leigh, 327; *Vidal* v. *Gerard*, 2 How., 196.)

Rapallo, J. After a careful examination of the deed of trust in controversy in this action, and of the adjudications which have been had upon it in the Court of Chancery and in the Supreme Court, we are satisfied that later decisions of this court require us to sustain the limitation in favor of the children of Abraham Fleet who were living when John K. became of age. We are relieved from any difficulty arising from obscurity in the language of the deed. The intentions of the grantor are plainly and emphatically expressed, and the only questions for us to determine are, whether the law will permit them to be carried into effect, or, if they cannot be carried out in every detail, then to what extent they should be effectuated.

The first trust created by the deed is to receive the rents and profits of the property and apply them to the support, etc., of the grantor's wife, of his reputed son, John K. Fleet, and of any children of the grantor and his said wife who

may be born after the date of the deed. The succeeding provisions of the deed clearly show that this trust, although created for the benefit of several persons, is to continue only until John K. Fleet arrives at the age of twenty-one years, and suspends the power of alienation during that period only. A trust to receive and apply the rents and profits of lands, the duration of which cannot extend beyond the lives of two designated persons, in being at the time of the creation of the trust, is permitted by the statute, and its validity is not impaired by the circumstance that during this authorized period of suspension of the power of alienation more than two persons are to enjoy the benefit of the income, or even that some of the designated beneficiaries are not *in esse* at the time of the creation of the trust. This point was expressly adjudicated in *Gilman* v. *Reddington* (24 N. Y., 9), and the doctrine is recognized in *Manice* v. *Manice* (43 id., 386).

The next direction of the deed is, that upon the arrival of John K. Fleet at the age of twenty-one years, the trustees convey to him and to the grantor's wife, Martha (if then sole), their respective proportions of the estate, such proportions to be determined by the number of children of the grantor and his wife who shall be living when John K. arrives at the age of twenty-one years, the grantor declaring it to be his express intention that the property shall go to and be divided among the said Martha, John K., and all lawful children of the grantor who shall be living at the time John K. shall arrive at age, in equal proportions, share and share alike.

This limitation of the remainder in fee, to take effect on John K. becoming of age, is clearly free from objection, and if the provisions of the deed ended here, no question could be raised as to its validity.

The next provision is, that in the event of the decease of said Martha, John K., or either of the children, the share to which such party would have been entitled shall be equally divided among the survivors. Taken in connection with all

the other provisions of the deed, it is quite apparent that this refers to a death before the division, as it disposes of the share to which the party dying would have been entitled if living. Some doubt may exist as to what the testator's intention was in case John K. had died before attaining the age of twenty-one years, but as it appears that all the parties have lived beyond that term, no question arises under this provision.

The deed then provides that if, when John K. arrives at age, the said Martha shall not be sole and unmarried, her share shall continue to be held by the trustees, in trust for her, so long as her husband shall survive; and in case she shall not survive her husband, her share shall, on her death, be vested in her heirs. This provision is entirely free from objection, as it would have been lawful in the first instance to have created a trust to continue during the lives of Martha and John K., and by this disposition her share must, in any event, vest absolutely in some one on her decease.

Thus far, the deed appears to be entirely free from any provision which could possibly suspend the power of alienation beyond the prescribed period. The whole difficulty which the courts have encountered lies in the next and concluding provision, viz.: that the shares of the children born after the making of the deed shall be held in trust for them until they arrive at majority.

It is sufficiently plain that the meaning of this provision is, that the share of each child shall be held in trust until such child becomes twenty-one years of age. If words had been used creating one of the trusts authorized by the Revised Statutes in the share of each of these after-born children, during minority, such trust would be illegal, inasmuch as it would suspend the power of alienation of each share during a portion, at least, of a life not in being at the time of the creation of the estate, and the statute allows such suspension only during the continuance of lives in being at the time of the creation of the estate. The only exception to this rule is where the suspension is caused by a contingent

limitaton of a remainder upon a prior remainder in fee, the contingency being the death of the first remainderman under age. (1 R. S., 723, §§ 15, 16; id., 726, § 37.) That exception does not apply to the present case. The material questions here are : First, whether the words of the deed are such as would create one of the authorized trusts; and, secondly, whether the effect of declaring such trust illegal, as causing an unauthorized suspension of the power of alienation, would be to defeat the whole estate limited to the grantor's children, or merely to defeat the trust attempted to be created during their respective minorities.

We think that both of these questions should be determined in favor of the appellants. The direction in the deed is simply that the shares of the after-born children shall be held in trust for them, by the parties of the second part, until said children shall arrive at lawful maturity. No power to receive or apply rents is given, nor are the former trusts referred to in any manner; nor is it even said that the parties of the second part shall continue to hold as before, but simply that the shares shall be held in trust, no trust being specified. Such language is, we think, insufficient to create any active trust authorized by the statute, or any but a mere passive, naked trust, to hold, under which the title would pass legally to the beneficiary.

But, assuming that the language were capable of being so construed as to create a trust to receive and apply rents, should the attempt to create that trust wholly defeat the provision made by the grantor for his children? Under the later decisions of this court, the doctrine has been adopted, that the general intent of a testator or grantor may be sustained by cutting off a void trust, which is separable from other valid trusts and dispositions, and not an essential part of the general scheme. (*Harrison* v. *Harrison*, 36 N. Y., 543; *Manice* v. *Manice*, 43 id., 384, and authorities cited.) Now, in the present case, the grantor declared, in the most explicit manner, his intention that all the property mentioned in the deed should go to and be divided among his wife, Martha,

his reputed son, John K., and all other lawful children of the grantor living when John K. should arrive at age, in equal shares. These grantees were to take absolutely, and in their own right, except only that if Martha should be a married woman at the time of the division, her share should be held in trust for her so long as she continued covert; and as to the younger children, a direction was superadded to the gift to them, that their shares should be held in trust for them during their infancy. This was a merely temporary provision, not practically affecting the general scheme of the deed. If the land had been given in trust to receive the rents and apply them to the use of the children during their lives, and no interest had been given them except as beneficiaries under such a trust, the case would have been different. But, under this deed, the property was in the first place given to the children absolutely, in equal shares. They were, at all events, to come into possession of their shares when they became of age, and hold them in fee; during their infancy they could not have disposed of them if there had been no trust, and the practical difference was very little whether, during that period, the property should be managed for them by a trustee or a guardian. If the direction to hold in trust during infancy be rejected as void, the direction to divide among these children remains, and even if regarded as a gift to them on their arriving at age, this would be sufficient to vest the estate in them; and the failure of the trust, which was to continue only during their infancy, should not invalidate the whole limitation to them. It was a merely incidental and practically immaterial provision, the failure of which should not defeat the main intent of the grantor. I think this very point was decided in the case of *Manice* v. *Manice*. In that case there was a devise and bequest to unborn grandchildren, to take effect in possession when they should become of age, but a trust was created to accumulate the income during the infancy of each grandchild. This trust for accumulation was held void as to the personal estate, but the effect was adjudged to be not to destroy the bequest, but to vest the

personalty absolutely in the grandchildren on the death of their mother discharged of the trust. That decision governs this case, even if it should be held that a trust was created in the shares of the children of Abraham Fleet, to continue during their respective minorities.

When this deed was before Assistant Vice-Chancellor Hoffman, he was of opinion that the limitation to after-born children was invalid, for the reason that no provision is made for the case of the death of John K. Fleet before twenty-one; and that in that case the deed would operate to keep up a trust for the after-born children during their lives. It is difficult to see how any such result could possibly follow; or how, under any circumstances, any trust for the after-born children could, under the terms of the deed, continue longer than during their respective minorities. But the further difficulty in the way of the construction claimed by the learned assistant vice-chancellor is, that if the case of the death of John K. Fleet before coming of age is unprovided for, the limitation to after-born children would have failed entirely in that event, as it is only those living at the time he should become of age who were entitled to take.

Judge Strong, when the case came before him, did not sustain the views of the assistant vice-chancellor, but placed his judgment on the ground that a trust was created for the after-born children, which created an illegal suspense of the power of alienation, and rendered the whole limitation void. If such a trust was created, and was inseparable from the other dispositions in favor of their children, the result at which Judge Strong arrived, would of course follow. But, according to the view we take of the deed, it did not create such a trust, and if it did, the cases decided in this court since the opinion of Judge Strong was delivered, establish the doctrine that the trust may be adjudged void without invalidating the other dispositions, if separable from them, and not an essential part of the scheme of the grantor.

When the case was in the Commission of Appeals the question was not decided, and it was not until after the

decision of the commission that the children born after the execution of the deed of trust were made parties to the action. None of the previous judgments are binding upon them, and they now have the right to claim their interests under the will. We think that, on John K. Fleet attaining the age of twenty-one years, these children became vested with the title to four undivided sixth parts of the property conveyed, free from any trust, and that no interest therein remained in the grantor, Abraham Fleet.

The judgment must therefore be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed