VILLAGE OF CORNING *et al. v.* RECTOR, ETC., OF CHRIST CHURCH *et al.*

(*Supreme Court, General Term, Fifth Department.* October 23, 1890.)

DEED—CONVEYANCE ON CONDITIONS—TRUSTS.

Land was conveyed to a village as sites for "the erection of public buildings, viz., a county court-house, * * * churches, * * * and for a public park, and for no other purposes" whatever. At the date of the deed there were churches and a school-house on the block, which were subsequently removed. Defendants' church never had occupied any portion of the land. In 1884, by an act of the legislature, the land was placed in the exclusive control of commissioners, to be used as a park, and the commissioners were empowered to remove any obstruction thereon except the court-house. Defendants obtained the consent of the commissioners to build a church on the land, but the same was revoked within four days. *Held,* in an action to enjoin the erection of the church, that the deed to the village merely recognized the vested rights of the religious bodies which then occupied the land, and did not authorize the erection of churches by other bodies; that no trust was thereby created in favor of defendants, and under the act of 1884 the consent obtained was a nullity.

Appeal from special term, Steuben county.

An action by the village of Corning to enjoin defendant the Rector, Church-Wardens, and Vestrymen of Christ Church of Corning from building a church upon block No. 66 of the lands of the village, known as a public park. There was judgment for plaintiffs, and defendants appeal.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*George T. Spencer,* for appellants. *A. S. Kendall,* for respondents.

MACOMBER, J. On the 10th day of April, 1837, prior to the incorporation of the village of Corning, the territory now embraced within the corporate

limits was, by the owners thereof, Ansel Bascom, Hiram W. Bostwick, and Bowen Whitney, plotted and laid out into blocks, and subdivided into village lots with defined streets and alleys.   Block No. 66, the right to occupy a portion of which is in controversy in this action, consisted of about four acres of land lying upon a side hill, towards the south side of the village.   Such lands were generally offered in market for sale and for occupancy except this plot No. 66, together with what is known as the "Dickinson House Square." There was reserved from sales to settlers this block No. 66, and the same was used by the inhabitants of the village thereafter, or so much thereof as was not otherwise occupied, as a public square or park, as pleasure grounds, and as a place for public gatherings.   Such use was continued for many years after the incorporation of the village of Corning, which was on the 12th day of January, 1848.   Churches and a school-house, all structures of wood, were erected upon portions of this park without objection being made, but without written authority; but the defendant the Rector, Wardens, and Vestrymen of Christ Church did not, nor did any of its predecessors, occupy any portion of such lands for church purposes.   Before the beginning of this action, however, all such church edifices, together with the school-house, had been removed, leaving this plot of ground without any buildings thereon except the county court-house.   On the 15th day of September, 1855, the original proprietors, by their trustees, Erastus Corning and Joseph Fellows, conveyed the fee of this tract to the village of Corning, excepting so much thereof as had been conveyed to the county of Steuben as a site for a court-house and jail, and it was expressed in such deed that this block "is to be used by the inhabitants of said village of Corning as sites for the erection of the following public buildings, viz., a county court-house, clerk's office, town or city hall, and goal, churches or places for public worship, for academies and union school-houses, and for a public park, and for no other purposes, and for no other use whatever; the last-described piece of land hereby conveyed to be used and enjoyed by the inhabitants of said village as a public park, excepting, nevertheless, and always reserving to the grantors or their representatives, the right at any time to lay one or more railroad tracks, with switches and all necessary siding therefor, through the said granted last-described piece of land, on such course and direction as they shall elect; to use for that purpose and no other use or purpose whatsoever, together with all and singular the hereditaments and appurtenances," etc.   It admits of no doubt that, by this conveyance, the fee of the lands in question was conveyed to the village of Corning, subject only to such rights of occupancy, if any, as had theretofore become vested. No trust was impressed upon the grant requiring the grantee to give to persons subsequently applying therefor any right of occupancy.   Under this deed no one could enter upon such lands without the permit of the village.   Whatever interest any religious corporation might seek to work out under it would be through a supposed trust imposed upon the grantee for its benefit.   But any such supposed trust is not recognized by the statutes of this state, in so far as it is claimed that the same was designed for pious uses, (1 Rev. St. p. 727, § 45,) and the same is not cognizable by our courts.   By chapter 318 of the Laws of 1840, § 2, the right to hold real and personal property in trust for certain purposes is conferred upon municipal corporations; but those purposes are educational, charitable, and secular in their character, and do not include such as may be termed pious or religious.   The right had been conferred already upon the county of Steuben to erect and maintain a court-house and jail upon a portion of this block.   The public park is concededly among the objects which the act of 1840 permits municipal corporations to maintain, and hence the deed to the village of Corning for these purposes was valid and capable of enforcement.   *Harrison* v. *Harrison*, 36 N. Y. 543; *Manice* v. *Manice*, 43 N. Y. 303; *Woodgate* v. *Fleet*, 64 N. Y. 566.   In our judgment, the true construction of the deed of 1855, above mentioned, in so far as it

appertains to the claim made by this religious body, is that it merely recognized the vested rights of the religious bodies which then occupied portions of these lands for religious purposes. There is nothing in the deed designed to perpetuate such occupation, nor is there anything in it designed to invite further occupation of that character. No provisions are found in that instrument by which any given religious society might put itself in position to demand of the village authorities the right to enter upon and possess the lands for religious uses. In the absence of such provisions, and with no means provided for carrying any supposed trust of this character into effect, a further discussion of the matter is unnecessary; for we know of no law which permits municipal corporations to parcel out its possessions for pious uses.

Yet, whatever the acquired rights of the religious bodies occupying portions of these lands may have been, there is at present no reason remaining why either they, or their successors, or any other religious bodies, should lay claim to any right of further occupancy. The several church societies occupying portions of this property have voluntarily, and doubtless in view of the general purpose for which this plot of ground was laid out, abandoned their possession, and have erected places of worship elsewhere. In the year 1884 the legislature, at the special instance and request of the village, passed an act (chapter 99) relating to this public park, by which it was enacted that this block should be under the exclusive control and management of a board of commissioners to consist of five persons named in the act. Such commissioners and their successors were made a board of commissioners to be known as the "Park Commission of the Village of Corning," and such commission immediately entered upon the discharge of its public duties. Such commission was given, by this act, full power to govern, manage, and direct the park, to grade, lay out, and improve and regulate the same, together with the approaches connecting said park with the streets, and to have full control of all streets, alleys, and passage-ways through the same. The board was further empowered to remove any obstruction that might exist upon the park, other than the removal of the court-house. It was also given the control and custody of funds and moneys contributed or appropriated for the improvement, grading, and management of the park, and was permitted to receive bequests, gifts, donations, in trust for the improvement and ornamentation thereof, and to adopt and pass such rules and ordinances as were thought necessary for the proper regulation and protection and government of the park and its approaches. Under this act it was not lawful for any person to enter upon this park for the purpose of erecting any building for religious worship or private occupation. The defendant the Rector, etc., of Christ Church, it is true, before beginning the work of erecting a church, obtained the consent of the trustees of the village, but the same, under this act, was a nullity. But even had the trustees the power to permit such occupation and use, the consent so given was but a mere license, and hence revocable at pleasure, and the same was in fact revoked before this religious body had expended any appreciable labor or money in pursuance of such permission. There is no room for the doctrine of equitable estoppel to be applied in this regard. *Cronkhite* v. *Cronkhite*, 94 N. Y. 323; *Duryee* v. *Mayor*, etc., 96 N. Y. 477. The judgment appealed from should be affirmed, with costs. All concur.