BESSIE M. STEWART v. CHATTANOOGA SAVINGS BANK et al.

Eastern Section. March 21, 1927.

Joe V. Williams, of Chattanooga, for appellant.

Thomas & Thomas and Strang & Fletcher, of Chattanooga, for appellee.

SNODGRASS, J. Bill filed to construe a will. Complainant and defendant, Chattanooga Savings Bank & Trust Company, are executrix and executor jointly of the last will and testament of Cecelia M. Stewart, deceased. The complainant was and is the only heir of the deceased, who apparently left a large estate. She is and was at the time of the filing of this bill —— years old, and unmarried. She files the bill both as an individual and as executrix against her associate, the Chattanooga Savings Bank & Trust Company, a corporation, and against Southern Howard Association of Tennessee, and the Chattanooga Woman's Christian Temperance Union, two corporations who were possible beneficiaries under the will, to construe the following clause therein:

"I desire the balance of my estate to go to the Working Girls Home in Chattanooga, Tenn., under the auspices of Howard Association as a building fund for above home providing the same be called 'The Sarah Shaffer Home for Working Girls' in honor of my sister, the late S. E. Shaffer, who gave of her time, means and strength to the building of such a home in Chattanooga, Tenn., (several years ago); for destitute and needy girls seeking employment and which was represented in all appeals to the public for aid as and was called 'A Working Girls Home' but afterwards renamed 'The Willard.' "

It is proper to say that in the previous suit referred to in the bill, about all the provisions of the will save the question in issue, which had been reserved, had been construed. The claim in the bill was and is that the said provision quoted is void ab initio, for a number of reasons. These reasons were specifically set out, and it was insisted that the complainant was entitled to, and it was asked, that the will be decreed to bequeath and to devise to complainant absolutely and in fee the entire estate of the said Cecelia M. Stewart, save and excepting the money bequests, which it was said the court might determine as valid; and to this end that

the executors of this will be required to make final report and settlement, and that they be discharged from further liability as executor; and it was asked that the complainant be given general relief.

The Chattanooga Woman's Christian Temperance Union answered, that it was a corporation for the public welfare under the law; that it was in charge of and conducts the Frances Willard Home; that it was formerly known as the Working Girls Home; that it is the same Willard and Working Girls Home named and designated in the bill. It maintained the validity of the questioned clause in the will, denied that it was void for any reason, insisted that the bequest was a most worthy one, for a most worthy need; placed itself in readiness to receive the benefit if entitled, laid the matter before the court for its protection, and joined issue on the allegations of the bill attacking the validity of the clause.

Chattanooga Savings Bank & Trust Company answered, that the facts stated in complainant's bill as to the status of complainant and the probate of the will of Mrs. Cecelia M. Stewart were true; that it was true that this defendant and complainant as executor of the will had filed the bill referred to in paragraph 3 of complainant's bill in this court, for the purpose of construing the will; that this defendant as executor was interested in the proper interpretation, construction and carrying out of the terms of the will because of said trust placed upon it, and that because of that trust defendant could neither admit nor deny the allegations of paragraph 4 of said bill, because the will of the said Mrs. Cecelia M. Stewart provided the following:

"After the payment of all just debts I give and bequeath to my daughter Bessie M. Stewart for life all my personal and real property of which I may be possessed, excepting the cash bequests in items below. Said life estate and the income thereof to be enjoyed by my said daughter during her natural life."

The answer further continued:

"It is further provided in said will, in item 1 thereof, for a bequest of $5000 to Miss Bessie M. Stewart, to be held by her as a separate estate free of all marital rights of any husband to whom she may at any time be married, and to have and dispose of as she may desire."

It was further provided in the 3rd paragraph of said will:

"I desire the net income of my estate to be given my daughter each month by the 15th or 20th."

The answer continued:

"That this defendant as executor under said will and with the trust imposed upon it by the terms of said will, which it has accepted, therefore submits to the court the question as to whether or not the attempt to limit the interest of complainant to a life estate is void." The answer admits the truth of the 5th, 6th and 7th paragraphs of the bill, insists that paragraphs 8 and 9 thereof are legal conclusions which are before the court for determination, and in which the defendant is interested only to see that the terms of the will are carried out according to their true intent and purpose. A pro confesso was taken against the other defendant.

Proof was taken and the cause heard before the Chancellor, which resulted in his holding and decreeing that the contingent residuary clause of the will of Mrs. Cecelia M. Stewart undertaking to devise, on the contingencies mentioned therein, certain properties to a working girls home in Chattanooga, Tennessee, under the auspices of the Howard Association, as a building fund for home does not include or refer to either the Southern Howard Association or the home known as the Willard Home operated by the defendant, Chattanooga Woman's Christian Temperance Union in the City of Chattanooga, and is vague and indefinite, and so much so that the same is void and of no effect. It was decreed that the entire provision contained in said contingent residuary clause of said will is null and void, for the reasons stated in the memorandum opinion prepared by the court and made part of the record.

It was further adjudged and decreed that while such provision is void, the net income of all the property covered and included in the last will and testament of the testatrix, after payment of debts, expenses of administration and the specific cash bequests provided for, goes to the complainant, Bessie M. Stewart during her life, and at her death to her child or children, or, if she die without leaving issue, then such remainder goes to the heirs at law of the testatrix, Mrs. Cecelia M. Stewart, except the real estate devised to the Board of Foreign Missions of the Methodist Episcopal Church, as adjudicated in the cause of Bessie M. Stewart et al. v. University of Chattanooga et al., in cause No. 21539 in this court. In other words the court holds, that the life limitation in the will of said Cecelia M. Stewart is valid.

Thereupon a petition to rehear was filed by the complainant, praying, among other things, to be permitted to take further proof; averring that she was born July 28, 1874, and that she was now fifty-two years of age; that when she was forty-five years of age in 1919 and about two years before her mother died, petitioner

experienced a change of life, all of which was well known to petitioner's mother, and that she was advised and averred that it is now impossible to have children; that she was advised it is proper to file this petition for rehearing, and if granted a rehearing she desires to introduce proof showing these facts; that petitioner was further advised, believes and avers that under a proper interpretation of said will, that since the contingent residuary clause of the will had been declared void, the clause is so intermingled with the other provisions of the will that it makes void and of no effect the parts undertaking to give petitioner an estate for life, all of which, it was averred, results in giving to petitioner, without limitation, all of her mother's property covered in her will. It was further stated in the petition that her mother's two brothers, Edwin P. Shaffer and J. H. I. Shaffer mentioned in said last will and testament died previous to the date of the death of petitioner's mother, and petitioner states that she has no living aunt or uncle; that all of the brothers and sisters of her mother and father died previous to the date of the death of petitioner's mother, and that petitioner's only living relatives are cousins, who live in other parts of the country, and who have never been thrown with the petitioner or her mother. The petition further continued: That petitioner was advised that it would be proper for the court to decree, in view of the above, and especially of the proof which she desired to offer, that the testatrix, Mrs. Cecelia M. Stewart, died intestate as to all of her property, and since the petitioner is the only child and heir at law of the testatrix, that she is entitled to have said property under the law of descent and distribution.

The court denied this application or the relief prayed for in the petition, and directed that since said petition had been filed it would not be necessary in case of appeal to show the action of the court thereon by bill of exceptions, but that the same was and is ordered to be made a part of the record, in the event complainant or any of defendants appeal from the decree. And all parties to the record consenting thereto, it was so ordered and adjudged.

To all of which action of the court, and particularly the action of the court in refusing to decree that since the contingent residuary clause in the last will and testament of the testatrix was void the life limitation therein provided is also void, the complainant alone, individually and as executrix, prayed, obtained and perfected an appeal to this court and has assigned errors. The defendant Chattanooga Woman's Christian Temperance Union also excepted, but did not appeal, and seems to have acquiesced in the decree of the court. The assignment is:

"1. The trial court erred in its decree because:

"(a) Since the trial court declared the contingent executory devise providing for a Girl's Home void, this also made the previous life limitation provision of the will void. This is true because the contingent provision for a Girl's Home and the life estate devised to the daughter were both a part of the general scheme of the testatrix in the creation of the trust mentioned in the will, and if a part is void all is void, and to hold one void but the other valid is for the court itself to write the testatrix's will.

"(b) The provision in the will for a Girl's Home was and is wholly dependent on the life limitation provision of whether or not the daughter would leave issue, and hence this invalid provision is so interwoven with the valid provision creating a life estate that it cannot be eliminated without interfering with and changing the main scheme of the testatrix; and even if there is a rule permitting courts to declare void and eliminate certain parts of a will and leave other parts standing and in force, there is an exception to such rule that the main and dominant purpose of the testator cannot be disturbed, and another exception that such otherwise valid parts cannot stand if they are used as the means for accomplishment of that which has been declared void; and still another exception that such otherwise valid parts will not be enforced if they work an injustice on the heirs at law of the testator.

"(c) To allow this life limitation to stand and be enforcible would work a distribution of the estate never intended or contemplated by the testatrix, and would amount to such distribution as to create an injustice against the complainant as the only heirs of the testatrix, and courts will not assume such prerogatives.

"2. The trial court erred also in refusing to give the complainant the relief prayed in her original bill, and in petition to rehear and in dismissing both of said pleadings."

We agree with the conclusions reached by the Chancellor, whose opinion is found beginning on page 33 and ending on page 35 of the record, which is referred to and made a part hereof, but it will not be necessary to copy the same. It would not necessarily follow, the residuary clause being void, that the previous life limitation would be void also. Upon the marriage of complainant and the birth of an heir (an event not regarded as impossible) the provision for the home would be defeated and become utterly immaterial. The trust would, and should, therefore, continue at least to the termination of this possibility, this provision being

valid. Notwithstanding complainant may have been past the ordinary change of life, the law, if such had been proven, would not assign this as an unsuperable barrier to the happening of such an event; and since apparently dead wombs have been known to revive and become fruitful, the law formulates no absolute rule of time foreclosing the happening of such an event, though indeed the improbability of such an occurrence after the change of life might well marshall as a circumstance, if material, to indicate for what it is worth what might have been in the mind of the testatrix when she made her will.

We think the fee is conditionally disposed of, notwithstanding it has been determined that the last conditional ultimate purpose has failed, and that the terms of the will itself have made this natural division in the purposes of the trust, which we are not authorized to conclude in advance will wholly fail of its purposes. Rather should we terminate this trust in advance of the other contingency named in the will, even though one of them has failed and bestow this property upon the complainant absolutely, we would substitute our will for that of the testatrix; for in the eyes of the law nothing would then prevent complainant from marrying, and in the course of events, notwithstanding its improbability, having a child, whose patrimony under the will we would be gambling away upon the chance that it might not occur. Besides, there is a contingency upon which some of this property would go to others, or the heirs of such others in case there was no child, and they are not before the court. But the will having provided for contingencies which the law recognizes as valid, in terms of no uncertain significance, we would not we think be authorized to say that she could not have had this possibility in mind, notwithstanding her alleged knowledge of conditions. Nor should this improbability be taken as conclusively establishing that she would not have so written her will giving her daughter a life estate only had she known that the ultimate conditional lodgment of the fee in the Working Girls Home would fail. She terminated the estate in the child or children of the daughter if such there should be. After the specific bequests and directions she gave the income of the property for life to the daughter, which she doubtless thought would be amply sufficient, the estate being a large one, for her support. She even essayed to direct the retention of certain investments in kind, manifesting some distrust in a judgment that might convert them. She associated with her daughter as executor of the trust a responsible banking corporation, which she thought assured a proper provision for her daughter, in all probability thought to be more secure than if she had invested her

at once with the entire corpus after paying the bequests. If the testatrix was intending only to give her daughter a life estate and thus secure her against any improvidence that might result in the distribution of the property, we cannot see how this purpose could have been better effected; and, if the working girls provision failed, to whom could the property more justly descend than to the heirs of the testatrix? It might ordinarily be presumed that the mother, at the death of her daughter without issue, would prefer that her property go to her heirs, so we do not think there is very much force in the argument that a possible injustice has been done or will result to anyone. At any rate under the presumptions of the law as to possible child birth, and the provisions of the will contingently but absolutely disposing of the estate upon the happening of such an event, we think it is beyond the power of the court to declare the life estate provision void merely because of the improbability of the assets vesting in a possible heir of the daughter. We think the dominant purpose was to give only a life estate to the daughter in any event, and to provide that it should finally go to the heir or heirs of her body, if there were any at the death of the daughter, in default of which it was to then go to the Home. So that by the terms of the will upon such happening the Home would have no interest whatever; and this failure to lodge the final resting place of the corpus of the property inevitably in the Home shows that this feature was not a dominant, but secondary purpose, of minor importance; and as the will evidences that it was only intended that the daughter should have a life estate, providing for her heirs in case there were any, we think at least the will of the testatrix has made it impossible to terminate this trust in advance of an event which can be determined only by the death of the daughter. This demise will now, under the finding and decree of the Chancellor, work an end of the trust, except for the purpose of its being wound up, though not for any purpose of arresting for such further period the vesting of the title under the law, which will be in the persons succeeding to all title. Nor can we say from the proof that this contingency was not in the mind of the testatrix, or that she would have provided any other result had she known that her heirs at law would thus inherit the remainder or balance of the property should her daughter fail to bear children.

These views sustain the will, notwithstanding it has now been ascertained that a possibly altogether immaterial provision for the ultimate lodgment of the corpus of the property has failed. It may be that had there not intervened a possible source in which the fee would lodge, thus cutting off entirely should it happen,

any chance of the Home taking anything, and had the terms of the will provided for the inevitable lodgment of the property in the Home, which failed for the reasons announced in the Chancellor's opinion, that the position of the complainant would have been sound and the authorities cited by her in point. But we do not think they cover the case at bar, and that to hold as contended for by the complainant would be to write a new will by the decree, defeating also the other trusts provided for. The testatrix had given each of two brothers $500, and provided that should her daughter marry and leave an heir at her death, the balance of the estate was to go to her heirs or heir; but should she not have any heirs, and the two brothers survived her, they were to have $500 more each; but should they not survive her, the amount mentioned should go to their heirs.

Another provision was, that the house selected by the daughter should at the death of the daughter go to the Missionary Society of the Methodist Church, which provision has in a former case been held to be valid.

It is thus seen that in the event she leave no heirs of her body the two brothers, if living when this is determined, will have $500 more each, and, if they do not survive her, this amount is to go to their heirs; so that the trust could not terminate as to these provisions, at least in advance of the death of the daughter.

Without undertaking a review of the cases cited in the brief of appellant, in one of the cases, that of Lockridge v. Mace, 109 Mo., 162, the court said:

"What become of the estate to Mary Lockridge, widow, for life; to Charles R. Lockridge, son, for life; remainder to his children for life? Do they share the fate of the clause which attempted to give to the great grandchildren an estate in fee, or is the will void only in so far as it exceeds the limitation prescribed by law? On this point Sir William Grant, in Leake v. Robinson, 2 Meriv., 368, remarked:

"'Perhaps it might have been as well if the courts had originally held an executory devise within allowed limit to be void only for the excess where that excess could, as in this case it can, be clearly ascertained. But the law is otherwise settled.'"

The reason and extent of its being otherwise settled is stated to be:

"Where the limitation which would fall within the allowed limit is so bound up with one which falls without the same as to constitute but one disposition of the property, there the common law will not interfere to save the prior limitation."

Authorities are then cited to sustain this rule, and the court continues:

"Guided by these authorities it must be held that the 3rd clause of the will, constituting as it does but one disposition of the home farm, must fail in toto."

In Johnston's Estate, 185 Pa., 179, it was held that the seventy-five year period did not violate the rule against perpetuities, but that the gift of the ulterior estate in remainder was a future contingent interest repugnant to such rule and void; and that as testator's general scheme was to keep his estate entire for an unlawful period, the particular estate must fall with this ulterior estate, and hence both were void, and the testator had died intestate and his property passed to his heir at law.

It is somewhat difficult to follow the involved reasoning of this case, which earned for it the status of an exception in Pennsylvania to the general rule, admitted to be—"that a prior estate neither receives enlargement nor suffers diminution when a remainder expectant upon it is declared void for remoteness." While it was said that no case in Pennsylvania had been found to create exception to the rule, that none had been found against it, and that elsewhere it was seen that the rule had been invariably applied; and that a recognized exception to the rule, as in the case they were discussing, the failure of the ulterior estate disturbs so as to defeat the main and dominant purpose of the testator; and that another was, where the particular prior estate is adopted as a means for the accomplishment of that which the law forbids; and that the case, falling within both exceptions, should be held as voiding the prior estate also; and that, as to these lands, said Johnston died intestate.

We do not think either of these cases are in point. In regard to the clause in the will under investigation, the part that failed—(the Working Girls Home) was not necessarily but only conditionally a part of the dominant scheme. The limitation of the life estate was not and is not necessarily connected or bound up with the Girls Home at all, but only conditionally so; and the question of the Girls Home in the eyes of the law may never become material, and, therefore, it may never necessarily become a part of the disposition of the property, and that the dominant scheme has not yet been defeated and may never be. As insisted by the appellee in its brief, under the authority (76 Conn., 189-193) cited, the illegal provision as to the Home could have no untoward effect upon the purpose of the testatrix until Miss Stewart should die. Not until then is the illegal provision a menace to the purpose and plan of the testatrix. There is also cited by appellee the case of Dennison v. Dennison, 185 N. Y., 438, in which it was said:

"In case of the death of any beneficiary without leaving issue at his death, there is a gift-over of which it is sufficient to say that its terms are such as to render it concededly illegal and void, and so the courts below have held. The invalidity of the gift-over in default of issue surviving the life tenant cannot affect the primary gift to the issue if there should be such. (Harrison v. Harrison, 36 N. Y., 543; Woodgate v. Fleet, 64 N. Y., 566; Underwood v. Curtis, 127 N. Y., 523.)"

What has been said applies also to the contention of appellant in his reply brief. In the first place a previous life limitation is not usually held void where ulterior provisions are void for remoteness. Nor is the life income,—a part of the trust scheme,—so interwoven with the Girls Home that it is a part and parcel of it. As seen, the Girls Home will have nothing whatever to do with the life provision should there be an heir of the body of the daughter, and is, therefore, not an inevitable part of the trust scheme. It is of course essential that there be no such heir to render the Girls Home provision material, but it is not essential to sustain the validity of the Girls Home provision in order that the rights of a possible heir or heirs be preserved.

As effecting the issues favorably to the contention of appellee, the following is cited:

"A codicil bequeathed property in trust to pay the income, and, if necessary, the principal, for the support of testatrix's niece, and, upon her death, authorized the trustee to pay over any remainder of the trust fund to the niece's children if she left any children, but if she died without issue, then to her heirs at law. Held that, since the main purpose of the codicil was to create the trust, the invalidity of the incidental provision thereof, bequeathing the remainder to the heirs of the beneficiary if she die without issue, as violating the statute against perpetuities, did not affect the validity of the trust." Russell v. Hartley, 78 A., 320, 83 Conn., 654.

"Under a will devising the income of real estate to one for life, and, should his son survive him, to his son during his life from and after the death of his father, the devise to the son was valid, and not affected by the invalidity of the limitation over after his life." Sumner v. Westcott, 84 A., 921, 86 Conn., 217.

"Where a testatrix bequeathed trust moneys in the hands of a trustee to her daughter, with a primary purpose to provide for the welfare of the daughter, with limitation over to her child or children, and the limitation over is void as

against perpetuities, the bequest to the daughter is not thereby invalidated, since it is a rule that, where effect cannot be given to all the provisions of a will, those parts may be sustained which conform to the rules of law, if no violence is thereby done to the general intention of the testatrix." Quinlan v. Wickman, 84 N. E., 38, 233 Ill., 39, 17 L. R. A. (N. S.), 216.

"Where testator devised his estate to his daughter for life, with power to dispose of it by will, and the daughter devised the estate to her husband for life and then to her daughter for life, with power to dispose of it by will, though the last limitation over was void, because in violation of the rule against perpetuities, the life estate was not void." Gambrill v. Gambrill, 89 A., 1094, 122 Md., 563.

"A life estate, or succession of life estates, at the death of the testator, or during a life or lives in being, and twenty-one years thereafter, are not necessarily invalidated by ultimate limitations which transgress the rule against perpetuities." In re Whitman's Estate, 93 A., 1062, 248 Pa., 285.

"The invalidity of a devise of a remainder after a life estate does not affect the validity of the life estate, but the remainder vests in the testator's heirs." Goffe v. Goffe, 94 A., 2, 37 R. I., 542, Ann. Cas., 1916B, 240.

And finally:

"A bequest of money was directed in the will to be held for the benefit of a married woman during her life, then to go to her issue, and in default of issue to her five brothers and sisters. She bought the contingent interest of three of these, and having no issue, filed a bill alleging that she was past the age of bearing, and asking to have three-fifths of the fund paid to her as her own property, and for interest on the whole bequest. Held: It is not impossible she may have children, and the contingency is not determined until her death. The fund, therefore, cannot become hers during her lifetime. She is clearly entitled to the interest on the whole fund during her life. But by her purchase she could only get what the contingent remaindermen could sell, viz.: their contingent remainder in the fund." 11 Heisk., 48.

These authorities we think show that, although the ultimate fee may go to the heirs at law of the testatrix, the estate must be held in trust pending the death of the daughter as liable to be determined by an heir of her body, and that the Chancellor was not in error in so decreeing. His decree is therefore affirmed, with cost against appellant and her securities, payable, however, out of any money belonging to the estate.

Portrum and Thompson, JJ., concur.