JOHN M. DENISON et al., as Executors and Trustees under the Will of DAVID S. DENISON, Deceased, et al., Respondents, *v.* HENRY M. DENISON et al., Respondents, and BESSIE M. BROWN et al., Appellants.

WILL — TRUST — SUSPENSION OF POWER OF ALIENATION. Where by the residuary clause of his will the testator, after creating a trust to provide an annuity for his wife, gave all the residue of his estate to his executors in trust for the benefit of the children of a named brother and of a sister who might be living at his decease, to be divided into shares, the shares to be held for the "use and benefit" of the several beneficiaries during their respective lives, and on the death of any beneficiary "in trust for his, her or their child or children and the issue, if any, of any of his, her or their deceased child or children who shall be living at the time of his, her or their decease respectively, his, her or their executors, administrators and assigns," the provision in favor of the issue of the life tenants must be held to constitute a gift which terminates the trust so that on the death of a life tenant the corpus of his share vests absolutely in his issue; there is, therefore, no illegal suspension of the power of alienation or of the absolute ownership of property.

*Denison v. Denison,* 103 App. Div. 523, affirmed.

(Argued May 11, 1906; decided June 19, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 23, 1905, affirming a judgment of Special Term construing the will of David S. Denison, deceased.

The facts, so far as material, are stated in the opinion.

*Franklin Bartlett* for appellants. The whole of the residuary clause of the will is void because it attempts to

create a perpetual trust, and because it suspends the absolute power of alienation of real estate and the absolute ownership of personal property for more than two lives in being at the death of the testator, and until there shall be a complete failure of descendants to testator's brother and to testator's sister. (L. 1897, ch. 417, § 2; *Soper* v. *Brown,* 136 N. Y. 248; *Colton* v. *Fox,* 67 N. Y. 351; *Herzog* v. *T. G. & T. Co.,* 177 N. Y. 86; *Haynes* v. *Sherman,* 117 N. Y. 433; *Knox* v. *Jones,* 47 N. Y. 389; *Schettler* v. *Smith,* 41 N. Y. 328; *Schlereth* v. *Schlereth,* 173 N. Y. 444.) The gift and devise of the rest and residue of the estate " from and immediately after their respective deaths in trust for his, her or their child or children, and the issue, if any, of any of his, her or their deceased child or children," is a continuance of the trust, and is not a trust for distribution or valid as a power. ( *Woodgate* v. *Fleet,* 64 N. Y. 566.) The trust provisions of the 7th clause are so intertwined and interwoven that no provision is separable; each provision is an essential part of the general scheme, and the whole clause or subdivision is, therefore, void. (*Knox* v. *Jones,* 47 N. Y. 397; *Brown* v. *Quintard,* 177 N. Y. 75; *Underwood* v. *Curtis,* 127 N. Y. 541; *Amory* v. *Lord,* 9 N. Y. 403.)

*Walter S. Logan* for plaintiffs, respondents. It was the intention of the testator that the corpus of his estate should remain in the hands of his trustees until a failure of issue to John M. Denison and Mary L. Russell. Such a purpose is absolutely void under the laws of this state. (*Colton* v. *Fox,* 67 N. Y. 348.) The purpose of the trust was entire and the life estates to the nephews and nieces cannot be separated from the balance of the 7th clause and sustained despite the invalidity of the remaining provisions. (*Coster* v. *Lorillard,* 14 Wend. 265; *Root* v. *Stuyvesant,* 40 Barb. 44; *Post* v. *Hover,* 33 N. Y. 593; *Savage* v. *Burnham,* 17 N. Y. 561; *Gilman* v. *Redington,* 24 N. Y. 9; *Harris* v. *Clark,* 7 N. Y. 242; *Amory* v. *Lord,* 9 N. Y. 403; *Ward* v. *Ward,* 105 N. Y. 68.)

*William T. Reed, Fred C. Harford* and *Russell G. Lucas* for Henry M. Denison et al., respondents. The life estates created by the 7th clause of the will in favor of the children of the testator's brother John M. Denison, and of his sister Mary L. Russell, who were living at the time of his death and the devises in fee to the issue of the life beneficiaries are valid. (*Savage* v. *Burnham,* 17 N. Y. 561; *Moore* v. *Hageman,* 72 N. Y. 376; *Hillyer* v. *Vanderwater,* 121 N. Y. 178; *Monarque* v. *Monarque,* 80 N. Y. 320; *Van Brunt* v. *Van Brunt,* 111 N. Y. 581; *Arnold* v. *Gilbert,* 5 Barb. 190; *Suydam* v. *Cornell,* 116 N. Y. 305; *Underwood* v. *Curtis,* 127 N. Y. 523; *Van Schuyver* v. *Mulford,* 59 N. Y. 431; *Kennedy* v. *Hoy,* 105 N. Y. 137.) Irrespective of the validity of the trust provisions of the 7th clause of the will, the court should sustain the scheme of bounty contained in the testator's will including the life estates given by it to the children of his brother, John M. Denison, and of his sister, Mary L. Russell. (*Mairs* v. *Freeman,* 3 Redf. 181; *Amory* v. *Lord,* 9 N. Y. 403.)

*Hollister Logan* for Myra B. Martin, as administratrix of the estate of William I. Montague, deceased, respondent. The court below erred in its construction of the provision for the benefit of the issue of the life beneficiaries. The testator intended this part of the trust, as well as the original life estate, to be an active one to pay income. (17 Am. & Eng. Ency. of Law [2d ed.], 7; *Harty* v. *Doyle,* 47 Hun, 410; *Barhydt* v. *Ellis,* 45 N. Y. 107; *Miller* v. *H., etc., R. Co.,* 90 N. Y. 430; *Ward* v. *Whitney,* 8 N. Y. 442; *Hamilton* v. *Taylor,* 18 N. Y. 358; *Sims* v. *U. S. T. Co.,* 103 N. Y. 477; *Persons* v. *Snook,* 40 Barb. 144.) Sustaining the trust as seven life estates would result in an impracticable and incoherent disposition of the property, which would instantly be repudiated by the testator. (*Sanford* v. *Goodell,* 7 Misc. Rep. 334; *Underwood* v. *Curtis,* 127 N. Y. 523; *Coster* v. *Lorillard,* 14 Wend. 265.) The rule that the court will lean toward the preservation of the valid parts of a partially

invalid will only applies where this can be done without maiming the general frame of the will or the testator's substantial and dominant purpose. (*Coster* v. *Lorillard*, 14 Wend. 265; *Root* v. *Stuyvesant*, 18 Wend. 257; *Persons* v. *Snook*, 40 Barb. 144; *Van Vechten* v. *Van Vechten*, 8 Paige, 104; *Harris* v. *Clark*, 7 N. Y. 242; *Amory* v. *Lord*, 9 N. Y. 403; *Knox* v. *Jones*, 47 N. Y. 389; *Van Schuyver* v. *Mulford*, 59 N. Y. 426; *Colton* v. *Fox*, 67 N. Y. 348; *Ward* v. *Ward*, 105 N. Y. 68.)

*Everett Masten* for Mary L. Russell et al., respondents. The provisions of subdivision 1 plainly intend a primary division of the residuary estate into shares, to be set apart each upon a separate trust for the life of a single beneficiary, with power in the trustees to dispose of and reinvest the property of each share from time to time, with the duty of collecting and paying over the income to the life beneficiary. (*Morse* v. *Morse*, 85 N. Y. 53; Champlin on Susp. of Power ot Alienation, § 157; *Beekman* v. *Bonsor*, 23 N. Y. 298.) By the provisions of subdivision 2 testator did not intend a trust, but a remainder over in fee of each share to the issue of the life beneficiary thereof upon death of such beneficiary. (*Manice* v. *Manice*, 43 N. Y. 303; *Woodgate* v. *Fleet*, 64 N. Y. 566; Schouler on Wills [ed. 1900], § 507; Chaplin on Express Trusts & Powers, §§ 414, 518.) Subdivision 3 provides an alternative contingent remainder as to each share trust, to take effect only in case subdivision 2 fails by reason of the death of the life beneficiary of the share without issue. It distributes the share in such contingency amongst the other shares as to which the original share trusts are still pending, upon the same trusts and with the same remainders in fee to issue of the life beneficiaries of the shares. The validity of this provision is not now involved, and it cannot affect the validity of the previous provisions of the clause. (*Jackson* v. *Phillips*, 14 Allen [Mass.], 572; Chaplin on Susp. of Power of Alienation, § 483; Fowler's Real Prop. Law, 291; *Schletter*

v. *Smith,* 41 N. Y. 328; *Perkins* v. *Fisher,* 59 Fed. Rep. 801; *Everitt* v. *Everitt,* 29 N. Y. 39.)

CULLEN, Ch. J.    The action is for the construction of a will. The appellants are certain of the testator's next of kin and heirs at law for whom he made no provision. They assert the invalidity of the residuary clause, and claim that as to the property passing under it the deceased died intestate. The great prolixity of the instrument and the comparative unimportance of the questions presented, except to the parties to the litigation, forbid our incumbering the reports with a literal statement of its provisions.    The testator after creating a trust to provide an annuity for his wife gave all the residue of his estate to his executors in trust for the benefit of the children of a named brother and of a sister who might be living at his decease to be divided into shares, the shares to be held for the "use and benefit" of the several beneficiaries during their respective lives and on the death of any beneficiary "in trust for his, her or their child or children and the issue, if any, of any of his, her or their deceased child or children who shall be living at the time of his, her or their decease respectively, his, her or their executors, administrators and assigns." In case of the death of any beneficiary without leaving issue at his death there is a gift over of which it is sufficient to say that its terms are such as to render it concededly illegal and void, and so the courts below have held. The invalidity of the gift over in default of issue surviving the life tenant cannot affect the primary gift to that issue if there should be such. (*Harrison* v. *Harrison,* 36 N. Y. 543; *Woodgate* v. *Fleet,* 64 N. Y. 566; *Underwood* v. *Curtis,* 127 N. Y. 523.) The question then is as to the interpretation and effect to be given to the provision in favor of the issue of the life tenant. If that gift terminates the trust then there is no illegal suspension of the power of alienation or of the absolute ownership of the property; while on the other hand if by the provisions of the gift a trust otherwise lawful is continued for the benefit of the children the gift would be

void as suspending the absolute ownership of property during the lives of persons not in being at the death of the testator. The learned trial judge held that on the death of a life tenant the corpus of his share vested absolutely in his issue. In this view we think he was clearly correct. The trust designated in the will is a dry or passive trust involving no active duties on the part of the trustees. In such case the law vests the legal title in the beneficiary. (Real Property Law, § 73.) A grant to A in trust or for the use or benefit of B is not void, nor does it fail. It is in law a grant to B. ( *Wright* v. *Douglass,* 7 N. Y. 564 ; *Woodgate* v. *Fleet, supra.*) It is also quite apparent that such was the intent of the testator, for while the executors are directed to hold the shares of the beneficiaries who took immediately on the death of the testator during their respective lives, the provision for the issue of the life tenant is unlimited and unqualified, " in trust for his, her or their child  *  *  *  his, her or their executors, administrators and *assigns.*" Surely the testator, although layman as he was, and possibly ignorant of the statute against perpetuities as he may have been, never contemplated the continuance of a trust for the benefit of the assignee of those children. (See *Hopkins* v. *Kent,* 145 N. Y. 363.) The learned counsel for the appellants insists that the same doctrine, if applied to the trusts for the immediate beneficiaries, renders them inoperative as trusts, for as to those no active duties are imposed upon the trustees. Other portions of the will lead to a contrary view, but granting the claim of the counsel in this respect it can have no effect on the validity of the will. The only result that would flow from his contention is that the life estates of the primary beneficiaries would be legal instead of equitable, and would not suspend the absolute ownership of the property for any period whatever. In that question, however, the appellants have no interest. It concerns only the life tenants. It is urged, however, that the testator intended to create a trust and that if his intention is not allowed to prevail the whole testamentary scheme should fall. This argument is equally applicable to every grant

made to one for the use or benefit of another, and would abrogate the statute which prescribes in such case, not that the grant shall be void, but that the legal title shall vest in the beneficiary.

We are, therefore, of opinion that the judgments of the court below were correct and should be in all respects affirmed, with costs to all parties to be paid out of the estate.

O'BRIEN, J.   This was an action to procure a judicial construction of the will of David Stewart Denison, who died on July 1st, 1898.   The will and the codicil attached were admitted to probate as valid testamentary instruments and the questions in this case relate solely to the construction and meaning of the seventh or residuary clause.

The court at Special Term held that the will was valid and this judgment was affirmed on appeal.   The contention of the appellants is that the residuary clause is void for the reason that by its provisions the power of alienation was suspended for more than two lives.   It is argued that the language used in framing this clause creates a perpetual trust and, therefore, of course, suspends the power of alienation.   It is not claimed to be merely the creation of a trust extending beyond two lives, but a trust that was to endure forever and tie up the title to the residuary estate perpetually.

The residuary clause is very long and very much involved. All that was necessary could have been expressed in very few words.   But the clause actually fills nearly four printed pages of the record and in the multitude of words and phrases employed it is not surprising that there is great difficulty in ascertaining the meaning of the instrument.   It may be conceded that from the wealth of words employed by the draftsman there can be selected some expressions which, standing alone and construed literally, would render the testator's disposition of the residuary estate invalid. . On the other hand, it is quite clear that when the will is viewed as a whole the mind is forced to the conclusion that the testator did not intend to die intestate as to any part of his property either

by omitting to make a will at all or by making one so palpably
contrary to law as some expressions in the testamentary clause
would indicate if the appellants' construction is to be adopted.
It is, therefore, the duty of this court to sustain the will if
that result is possible by means of any fair construction, rather
than to hold that the testator intended to create a trust in
perpetuity.

It is not a holographic will. It was evidently drawn by
counsel learned in the law. The draftsman, however, failed
to appreciate the importance of simple and concise language,
and was led, for some reason, to insert provisions which were
wholly unnecessary, and which, taken literally or upon close con-
struction, would endanger the validity of the whole instrument.

It is conceded that by the terms of the will the widow of
the deceased was given a life interest in the whole residuary
estate. Upon her death one of the future estates in trust,
which the statute permits to be created, had terminated, and
unless more than another trust estate for life was created, then
the statute was not violated. The residuary clause is so long
and so obscure that it is not practicable to set it out in full.
It has been analyzed with great intelligence in the very able
opinion which was given by the learned judge at Special
Term. We agree in the construction given to the will in that
opinion, and what remains to be said here may seem to be
little more than a paraphrase of that opinion; but since the
learned court below on appeal gave no opinion, it may be
necessary for us to express briefly the views which we think
must lead to an affirmance of the judgment. This is a case
for the application of the rule that in order to effectuate the
intention of the testator derived from the whole will, gram-
matical rules may be disregarded and words and limitations
may be transposed, supplied or rejected. (*Pond* v. *Bergh*,
10 Paige, 140, 152; *Phillips* v. *Davies*, 92 N. Y. 199; *Starr*
v. *Starr*, 132 N. Y. 158.)

The testator, in the residuary clause, made a bequest in
trust for the use and benefit of the children of his brother and
sister, who should be living at the time of his death, and the

issue then living of deceased children, and directed the trustees to divide his estate as soon as practicable into as many shares as there were beneficiaries, and to hold the shares so set apart for their respective use and benefit during their respective lives. Later on, the will authorizes the trustees to sell and dispose of such part of the estate as may be necessary to make a fair and equitable division of the same among the children and descendants of said trustees living at the time of the testator's death.

It is entirely clear that the will thus created separate life estates in trust, and that it did not suspend the power of alienation of any portion of the trust estate for more than a single life, in addition to that of the widow. The will further provides that after the respective deaths of such life beneficiaries their respective shares shall be held in trust for their respective children, and the issue of such as shall have died as *tenants in common*, the children to take *per capita*, and the issue of deceased children *per stirpes*. It would also seem to be reasonably clear that the testator did not by this latter provision intend to create an active trust, but that the trustees were to hold the property simply for the purpose of distribution. There are several provisions of the will that justify this conclusion.

(1) There were no words directing that the trustees shall hold such shares for their use and benefit during their respective lives. The testator deemed those words necessary in creating the first life estate, and their omission here is quite significant.

(2) The provision that after the death of the first life beneficiaries the trustees should hold their respective shares in trust for their respective children who shall be living at the time of such decease and the then living issue of such as shall have died adds force to this construction. If the testator intended a perpetual trust for the benefit of the children and descendants of the trustees, why did he so carefully limit the estate upon the death of the first life beneficiaries to such children and descendants *as should then be living ?*

(3) Further confirmation of this construction is found in the fact that the testator directs that upon the death of the life beneficiaries their respective estates shall be held for their children and descendants as *tenants in common*. This clearly indicates that no active trust was contemplated, but merely a power of distribution.

(4) It will be observed further that the cross-remainders which the will purports to create upon the death of the children and descendants of the trustees *to whom shares have been limited for life* are ineffectual. These cross-remainders can only be given effect by tacking them to the first life estates created as those are the only estates that are specifically limited for life. If, therefore, the testator had intended a perpetual trust and not merely a trust for the purpose of distribution to the second takers, why did he limit the cross-remainders to the death of the first takers without issue?

Again, if the will had said "in trust to *divide* the estate among his, her or their child or children" instead of "in trust *for* his, her or their children," no one would question this construction. The context of the will shows that this was the clear meaning and the courts may interpolate those words in order to carry out such intention.

While these cross-remainders are doubtless invalid, they are of no present consequence, inasmuch as the conditions which would give rise to them have never occurred. It is generally quite sufficient to deal with these questions when the case arises. They certainly can have no effect upon an interest bequeathed to a life beneficiary, who has children or other descendants. Hence, these cross-remainders may be eliminated from the case since it cannot be said that their presence in the will is necessary for any general scheme of the testator in the disposition of his property.

The provision that in case each and every one of the life beneficiaries should die without children or descendants, the testator's estate should be distributed according to the intestate laws was evidently inserted out of abundant caution to guard against a possible intestancy and is of no consequence

for the reasons already stated. So also the provision that the shares of the testator's nieces and grandnieces shall be held by the trustees for their separate use free and clear from any debts of their husbands has reference solely to the first life beneficiaries. This is clearly manifest because the language is " to hold the shares or portions *which in the division of my estate they shall set apart to my nieces and grand-nieces* for their sole and separate use and benefit free and clear," etc. The first life estates are the only ones that the trustees are called upon to divide and set apart. We think that the will taken as a whole is capable of a construction that will render it valid, and that the objectionable clauses above referred to can be cut off and eliminated without destroying the general scheme of the testator.

The judgment should be affirmed, with costs to all parties who have appeared in this court payable out of the estate.

VANN, WERNER and HISCOCK, JJ., concur with CULLEN, Ch. J.; O'BRIEN, J., reads for affirmance; HAIGHT, J., dissents; WILLARD BARTLETT, J., not sitting.

Judgment affirmed.