In the Matter of the Application of ABRAHAM BASSFORD, as Sole Surviving Trustee under the Last Will and Testament of SARAH McGEEHAN, Late of the County of New York, for Instructions Regarding the Last Will and Testament of SARAH McGEEHAN, Deceased.

In the Matter of the Judicial Settlement of the Account of Proceedings of ABRAHAM BASSFORD, as Sole Surviving Trustee under the Last Will and Testament of SARAH McGEEHAN, Deceased.

THE ROMAN CATHOLIC ORPHAN ASYLUM IN THE CITY OF NEW YORK and Others, Appellants; ABRAHAM BASSFORD, Respondent.

First Department, April 21, 1922.

Wills — suspension of power of alienation — codicil giving life estate and dividing remainder thereon into two parts, giving income from one part to one person and income from one-fourth of other part to each of four persons and then devising remainders outright, valid — four separate trusts created in respect to second part — valid disposition of remainders of both parts — intent of testatrix plain — when sustaining validity of codicil sustains will — guardian and ward — appeals by special guardians of heirs from decree cutting off heirs not unwarranted — same person should have been made special guardian in each of two closely related proceedings.

A codicil to a will is valid which provides for a life estate in certain realty of the testatrix, divides the remainder after such life estate into two parts, directing that the income from one part be paid to one person during his life and that the income of each one-fourth of the other part be paid respectively to each of four other persons during their lives, and devises the remainders, after their deaths, outright. Four separate trusts are created in respect to the second part and, hence, there is no suspension of the power of alienation for more than two lives.

The words, contained in the codicil, "after their deaths, I give, bequeath and devise to 'The Sisters of Charity of the St. Vincent de Paul,'" are sufficient to make a valid disposition of the remainders after the life estates in the two parts. The omission to use the words "the remainders" or their equivalent may be supplied by implication, as the intent to dispose of such remainders is plain.

Where the only provisions in a will which are questioned are superseded by a codicil thereto, sustaining the codicil sustains the will.

Appeals by special guardians of certain heirs to an estate from a decree of the Surrogate's Court, holding trusts valid which cut off such heirs, cannot be said to be unwarranted.

It seems, that the same person should be appointed the special guardian of certain heirs in an accounting proceeding and in a proceeding for the construction of the will pertaining to the same estate, or, if that is not done, one of the special guardians should be discharged if the proceedings are consolidated.

GREENBAUM, J., dissents.

APPEAL by The Roman Catholic Orphan Asylum in the City of New York, from a decree of the Surrogate's Court of the county of New York, entered in said surrogate's office on the 14th day of June, 1921, sustaining the validity of the last will and testament of the testatrix and the first codicil thereto and construing the same

and adjudging that she devised to the Sisters of Charity of St. Vincent de Paul remainders in fee in all of her real property, and directing that the sole surviving trustee under her will pay the cash balance remaining in his hands after certain deductions and assign a certain mortgage to the Sisters of Charity of St. Vincent de Paul.

Appeal by Henry H. Bassford from such decree in so far as it adjudges that the Sisters of St. Vincent de Paul take the remainder of the real property of the testatrix.

Separate appeals by Andrew S. Hamersley, special guardian for Marie Coyle and others, in the accounting proceeding, and by Louis A. Cuvillier, special guardian for Marie Coyle and others, in a proceeding for the construction of the will, from all of the provisions of said decree except those relating to costs and allowances, and except so much of the decree as overrules the exceptions on behalf of the Roman Catholic Orphan Asylum to the report of the referee.

The testatrix, Sarah McGeehan, died May 17, 1876, leaving a last will and testament and two codicils thereto all of which were duly admitted to probate on the twenty-seventh day of October that year. The executrix and executor qualified, and after the death of the survivor of them and on February 20, 1884, Abraham Bassford and Edward H. Hanigan were appointed substituted trustees. Hanigan died October 27, 1892. The testatrix left three parcels of real estate known as No. 10 Avenue C, corner of Second street, 17 Avenue C, which were improved, and a vacant lot known as No. 1251 Washington avenue, and two leases of buildings both of which expired May 1, 1894, all of which came into the hands of the substituted trustees. On the 20th of March, 1919, a proceeding was instituted by Abraham Bassford, as sole surviving trustee under the last will and testament of Sarah McGeehan, to have the validity and effect of all disposition of real property made by her will and codicils thereto determined; and on the 21st of August, 1919, he filed an account of his trust from the commencement thereof and instituted a proceeding for the judicial settlement of his accounts. On the 9th of December, 1919, the two proceedings were consolidated and the issues arising therein were thereafter referred to a referee who made a report on the 27th of October, 1920, and a supplemental report on the fourteenth of December thereafter. The decree from which the appeals were taken was made on the motion for the confirmation of the reports. The will was duly executed on the 17th of February, 1869. The testatrix thereby, after directing the payment of her just debts and funeral expenses, bequeathed all of her personal property excepting leasehold property to her sister, Ellen Gallagher, and also gave, devised and bequeathed to her the premises known as No. 336 Stanton street, city of New

York.   By the 3d clause of the will she gave, devised and bequeathed to her sister all the rest, residue and remainder of her real estate and all of her leasehold estate to have and to hold the same during the term of her natural life.

The 4th clause is as follows:

"*Fourthly.*   After the decease of my said sister, Ellen Gallagher, then I give, devise and bequeath all the income, rents, issues and profits accruing or arising from both the Real Estate and the Leasehold property aforesaid (after paying the interest on Mortgages the taxes and assessments which may be imposed on the said Real Estate and Leasehold property and the expenses of keeping the same in repair) to my Nephews Edward Hannegan, James Hannegan, Bernard Hannegan and my Niece Sarah Ellen Bassford, all children of my deceased brother Bernard Hannegan and John Hannegan, a son of my deceased brother Dennis Hannegan, to be divided among them share and share alike for and during the term of the natural life of each of them."

The testatrix by the 5th clause attempted to dispose of the remainders after the life estate of her sister and the life estates of her niece and four nephews.   The first paragraph of that clause is as follows:

"*Fifthly.*   After the decease of my Nephews and Niece aforesaid then all my Real Estate and leasehold property shall be distributed in the following manner, viz: "

Following the provisions quoted, the clause contained five paragraphs numbered 1 to 5 inclusive.   The first of these is as follows:

"1. After the decease of the first of my Nephews or Niece aforesaid I give, devise, and bequeath the equal undivided one fifth part of all my Real Estate and Leasehold property aforesaid to the 'St. Josephs Home for Aged Females' under the charge of the Sisters of Charity of St. Vincent de Paul and situated in the City of New York to have to hold the same for the benefit and use of the said Institution forever."

The others are in the same form and each gives, devises and bequeaths an equal undivided one-fifth part of her real estate and leasehold property after the death of the second, third, fourth and fifth life beneficiaries.   The undivided fifth after the fourth death is given to the devisee named in the 1st subdivision.   The undivided fifth after the second death is given to St. Vincent's Hospital, which it is recited in the will is under the charge of the Sisters of Charity but it is not stated whether she means the same Sisters of Charity mentioned in the 1st subdivision; and the undivided fifths devised after the third and fourth deaths are to the appellant, the Roman Catholic Orphan Asylum, " to have and

to hold the same for the use and benefit of the said institution forever." The 6th clause of the will is as follows:

" *Sixthly*. After the decease of my beloved Sister Ellen Gallagher I hereby order and direct my Executor hereinafter named to collect all the rents, issues and profits accruing or arising from the aforesaid Real Estate and Leasehold property and after paying and deducting the usual commissions allowed for collecting the same the interest on the Mortgages, the Taxes and assessments which may be imposed upon the said Estate and the expenses of keeping the same in good repair then to pay over the balance of the moneys so arising as aforesaid to my Nephews and Niece aforesaid or in case of the death of any of the said nephews or niece then to the Institutions above named in the order in which they are respectively named in this my Will equally share and share alike at least once in each and every year or oftener if my said Executor may see fit or deem proper. If the executor hereinafter named should die or become incapacitated to act as Executor before the several Institutions above named become wholly vested in the fee of the aforesaid Real Estate and Leasehold property then I authorize and direct my Nephews and niece aforesaid or a majority of them to select some suitable and proper person to take charge of the aforesaid Real Estate and Leasehold property in the same manner as the Executor hereinafter named is authorized and directed by this my last Will and Testament."

These are the only provisions of the will with the exception of the last paragraph, by which the testatrix appointed her sister and one Attridge her executrix and executor. The first codicil, being the only one in question, is undated, and there is no evidence as to when it was executed excepting that it is to be inferred that it was executed between February 17, 1869, the date of the will, and November 16, 1875, which is the date of the second codicil. The material provisions thereof are as follows:

### FIRST CODICIL

" WHEREAS, I Mrs. Sarah McGeehan of the City, County and State of New York, have made my last will and testament in writing, bearing date the Seventeenth day of February in the year of our Lord one thousand & eight hundred and sixty-nine in and by which I have bequeathed to my Nephews Edward H. Bernard and James J. Hannegan and my niece Sarah Ellen, wife of Abram Bassford, also my nephew John S. Hannegan each one-fifth equal undivided part of amount rents coming from my property, after paying expenses accruing from debts or repairs on same, for their use during their life, after the death of Mrs. Ellen Gallagher,

" Now, therefore, I do, by this writing, which I hereby declare to be a codicil to my last will and testament, and to be taken as a part thereof, order and declare that my will is, that my sister Mrs. Ellen Gallagher has the sole right to all the rents arising from property during the natural term of her life,

" After her death the property owned by me on the South East corner of Ave C. and Second St. the rents therefrom after debts, expenses in way of repairs are paid, to be applied to the use of my nephew Bernard Hanigan, during his life.

" And to my nephews Edward H., James J. — and John S. Hanigan, and my niece Sarah Ellen, wife of Abram Bassford, each one-fourth part amount of rents after debts, and expenses in way repairs, are paid of the remaining part of my property, for their use during their lives, after their deaths, I give, bequeath and devise to ' The Sisters of Charity of the St. Vincent de Paul,' a Corporation duly incorporated under and pursuant to the laws of the State of New York, for the benefit of the Institution under their charge known as ' St. Joseph's Home ' for Aged Females, in fifteenth street in the city of New York."

The referee reported that the provisions of the codicil and of the will disposing of the remainder are invalid and that with respect thereto the testatrix died intestate; that the provisions of the will giving her sister a life estate in the remainder are valid, and that the provisions of the codicil giving a life estate in the premises at the southeast corner of Avenue C and Second street to her nephew Bernard Hanigan are valid; but that the provisions of the codicil by which she attempted to create life estates in the rest of the remainder for the benefit of her other three nephews and her niece are void as creating an unlawful suspension of the power of alienation. The referee also reported in favor of the distribution of the income of the realty in the hands of the trustee among the heirs of the testatrix, specifying the proportion thereof which the respective heirs are entitled to receive.

The surrogate refused to confirm the reports of the referee and sustained all of the provisions of the will and codicil, and held that the Sisters of Charity of St. Vincent de Paul take the remainder under the codicil for the benefit of the institution under its charge known as St. Joseph's Home for Aged Females. (See 115 Misc. Rep. 737.)

*Edward H. Daly*, for the Roman Catholic Orphan Asylum in the City of New York, appellant.

*Andrew S. Hamersley*, special guardian for the infants Marie Coyle and others, appellant.

*Louis A. Cuvillier*, special guardian for the infants Marie Coyle and others, appellant.

*Peck & Hancock [Bayard L. Peck]*, for the Sisters of Charity of St. Vincent de Paul and others, respondents.

*Campbell, Flaherty, Turner & Strouse [William Alexander Campbell]*, for the trustee, respondent.

LAUGHLIN, J.:

The testatrix left no father, mother or direct descendant and no brother and only the one sister named in the will and codicil. She was survived by her sister and by the nephews and the niece named in the will and by other nephews and nieces.

It is manifest that she intended and attempted to dispose of all of her property by the will and codicil to the exclusion of her heirs excepting as provisions were made therein for the benefit of some of them. This she had a perfect right to do, and the point presented for decision is whether by the will and codicil, which were duly executed, she manifested such intent in the manner prescribed by law so that it may be carried into effect.

It will be observed that neither the will nor the codicil created any express trust in the executrix and executor with respect to the real estate during the life of the sister of the testatrix and that by the will she expressly gave to her sister for life the use of all her real estate and leasehold property other than the premises she devised to her outright by the second clause of the will; and by the codicil she expressly reaffirmed this by providing that her sister should have the sole right during the term of her natural life to all the rents arising therefrom. It is perfectly clear, therefore, that both by the will and the codicil the sister of the testatrix was given the use and enjoyment of the other real property for life. It is equally clear that by the will she attempted to make her executor, upon the death of her sister, trustee of an express trust to collect the rents, issues and profits of the remainder of the real property and to pay therefrom taxes, assessments, interest on mortgages and the expenses of keeping the premises in good repair and to divide the surplus into five equal parts and to pay one part to each of the four nephews and to the niece therein named, if living, and in the event of the death of a nephew or of the niece, then to pay the part intended for the deceased nephew or niece to the institution taking the remainder on the death of such nephew or niece as prescribed in the 5th clause of the will wherein she provided the order in which the institutions should take the respective undivided fifths of the remainder. It is evident also that she intended that the respective institutions should take

the respective fifths of the remainder in fee upon and in the order of the deaths of the nephews and niece, for she expressly so provided in each of the five subdivisions of the 5th clause devising the respective fifth of the remainder; but notwithstanding such vesting of the fee of the remainder, she attempted to provide by the 6th clause that her executor should continue to manage the real property in its entirety and to collect and disburse the rents arising therefrom until the death of the last survivor of her nephews and niece. If we should hold the codicil invalid, it would become necessary to decide whether the 6th clause of the will could be sustained on the theory that it provides for five separate trusts, which is clearly shown to have been the intent of the testatrix both by the provisions of the will that the institution taking the remainder upon the death of the nephew or niece should take the share of the surplus income which the deceased nephew or niece would have taken but for his or her death, and by her declaration in the codicil that she had by the will bequeathed to each of her nephews and to her niece an equal undivided fifth part of the surplus income, and that each trust was only for the life of a nephew or niece, and that her attempt to empower her executor to manage for the institution the remainder vested in it might be deleted or regarded as not affecting the remainder in fee devised to the institution; but if the codicil can be sustained, it is unnecessary to decide or to consider those points. We find that by the codicil the testatrix not only declares that it is a codicil to this will and testament, which she identifies by the date of its execution, but she declares that it is to be taken as a part thereof, and after reaffirming the life estate of her sister in the remainder, she severs the remainder into two parts and provides that one of the nephews named in the will shall take, during life, the surplus income arising from the premises at the southeast corner of Avenue C and Second street, and that her other three nephews and niece named in the will shall each receive, during life, *one-fourth* of the surplus rents of the remainder of the real property. These provisions made the executor trustee of express trusts and vested in him as trustee the legal estate for the period of the respective trusts with respect thereto. (*Tobias* v. *Ketchum,* 32 N. Y. 319; *Garvey* v. *McDevitt,* 72 id. 556; *Matter of Magnus,* 179 App. Div. 359; *Mee* v. *Gordon,* 187 N. Y. 400.) There can be no doubt but that the codicil in so far as it gives to one of the nephews the surplus income arising from the specified premises at the southeast corner of Avenue C and Second street is valid, for with respect to that, clearly the power of alienation was only suspended during the life of the sister of the testatrix and that particular nephew. I am also of opinion

that the codicil can and should be sustained as giving an undivided one-fourth of the surplus income of the remainder of the real property to each of her other nephews and to her niece, for by specifying that each is to have one-fourth only and by not attempting, upon the death of one, to give his or her one-fourth of the income to the survivors, she has, I think, made it clear that she intended to create four equal separate trusts in the surplus income, one for each of her three named nephews and one for her niece; and on that theory the trust as to each would terminate upon his or her death. (*Denison* v. *Denison*, 103 App. Div. 523; affd., 185 N. Y. 438; *Stevenson* v. *Lesley*, 70 id. 512; *Savage* v. *Burnham*, 17 id. 561; *Vanderpoel* v. *Loew*, 112 id. 167; *Hardenbergh* v. *McCarthy*, 130 App. Div. 538.) On this point the codicil contains no gift of that part of the surplus income which a deceased nephew or niece but for his or her death would have taken, and contains no provision continuing or attempting to continue the trust with respect to such fourth of the remainder.

The most troublesome point presented for decision is with respect to whether there is a valid disposition by the codicil of either or both of the remainders into which the testatrix upon the death of her sister so divided the remainder for the purpose of giving the surplus income of the specified parcel to one nephew and one-fourth of the surplus income of the rest of it to each of the others. The attempted devise of these remainders is in the final sentence of the codicil, which immediately follows the sentence giving the surplus income of the specified premises to one of her nephews and one-fourth of the surplus income of the remainder to each of the other three nephews and to the niece. By the codicil the testatrix says, " After their deaths, I give, bequeath, and devise to ' The Sisters of Charity of the St. Vincent de Paul,' " describing it as a corporation and specifying the particular institution under its charge which she desires to have the benefit of the devise. The words " their deaths," as here used, plainly refer to all of those mentioned in the preceding sentence, viz., the four nephews and the niece, who were given life estates; and, therefore, the reasonable inference is that she was attempting to make some disposition of the property in which they had life estates and that embraced all of the remainders including the specified premises, the surplus income of which for life she had given to one of her nephews. All that remained of that property not otherwise disposed of, was remainders, viz., the remainder in the specified property, the trust with respect to which was to fall in on the death of the nephew who was to take the income thereof during life, and the undivided fourths of the other remainder, the trust with respect to each of which was to fall in

on the death of the nephew or the niece who was to receive the income thereof. With respect to such remainders she might have attempted to provide for further trusts but they would have been invalid and that should not be presumed, for there is nothing in the phraseology employed to indicate that she intended any disposition of these remainders other than absolute devises. She might have devised only part of the remainders but that would have left the provisions of the will indefinite and, at least, of doubtful validity with respect to devising the rest. The words employed, " I give, bequeath, and devise," plainly indicate an intent to make an absolute devise and they remain unmodified by any other provision of the codicil. It seems to me, therefore, that we are not left to speculate either with respect *to the property* which she was attempting to give, bequeath and devise or with respect to *the nature of the gift, bequest and devise* she intended to make, and that it plainly appears that she intended to give, bequeath and devise all of the remainders absolutely to the Sisters of Charity of St. Vincent de Paul. The will and codicils are written in longhand and show either a lack of care or knowledge concerning proper punctuation and the proper use of capitals. Both by the will and by the codicil she attempted to provide that all the remainder of her real estate should be held by her executor upon certain trusts. By the codicil she so changed the trusts as to require a division or a different division of the corpus of the remainder; and then it is manifest that she attempted to devise the remainders by giving all of them to one of the charitable devisees named in the will. Although she has omitted expressly to state that she was attempting to give, bequeath and devise these remainders, by failing to use the words " the remainders " or " the real property " or " the rest " or " the residue " or equivalent words, still since her intent is plain, the omission may be deemed to have been inadvertent and may be supplied by implication in order to give effect to her intent and to sustain the codicil. (*Matter of Bassett*, L. R. 14 Eq. Cas. 54; *Eidt* v. *Eidt*, 203 N. Y. 325; *Phillips* v. *Davies*, 92 id. 199; *Marsh* v. *Hague*, 1 Edw. Ch. 174; *Pond* v. *Bergh*, 10 Paige, 140; *Starr* v. *Starr*, 132 N. Y. 154; *Masterson* v. *Townshend*, 123 id. 458; *Roe* v. *Vingut*, 117 id. 204, 216; *Matter of Vowers*, 113 id. 569; *Matter of Farmers' Loan & Trust Co.*, 189 id. 202; *DuBois* v. *Ray*, 35 id. 162; *Kahn* v. *Tierney*, 135 App. Div. 897; *Bradhurst* v. *Field*, 135 N. Y. 564, 568.)

In *Eidt* v. *Eidt* (*supra*) in construing a will, the word " and " was supplied to give effect to the intent of the testator, and the Court of Appeals, in declaring the effect to be given to the plain intent of the testator, said: " It overrides the inadequacy or

incorrectness of the language or the punctuation, or any crudity of the will. To effectuate it, the courts will transpose or insert or disregard words or phrases." In *Matter of Farmers' Loan & Trust Co. (supra)*, in discussing the authority of the court in construing a will to carry into effect the intent of the testator, it was said: "The courts may supply words, phrases, punctuation, and even transpose sentences in order to ascertain and determine the intent of the testator." In *Phillips* v. *Davies (supra)* the Court of Appeals held that where on an examination of a will the intention of the testator is plain, the court has the right and it is its duty to subordinate the language to the intention and that "in such a case, the court may reject words and limitations, supply them or transpose them, to get at the correct meaning." In *Dreyer* v. *Reisman* (202 N. Y. 476) the testator, after deducting the payments of his debts and funeral expenses and expenses of administration, attempted to make a gift, devise and bequest of some kind to his children but did not specify the property, and he also directed that his real property should be sold. The court refused to supply words to describe any property on the ground that the intention of the testator with respect thereto was not expressed. But the provisions of the will concerning a devise to the children did not relate to any particular property, while in the case at bar it is perfectly clear that the provisions of the will by which the testatrix attempted to make the devise related to the remainder and, therefore, the property is sufficiently identified. In *Leggett* v. *Stevens* (185 N. Y. 70) the testator directed that after a life estate a trust fund should be equally divided between his adopted daughter, if living, and if not that it should go to his next of kin. He left an adopted daughter *and a son*. The court refused to supply words to entitle the son to take half of the fund on the ground that there was no certainty with respect to whom he intended should share it with the adopted daughter. In *Brown* v. *Quintard* (177 N. Y. 75) the testator left four children and gave one-fourth of his residuary estate to one of his sons but failed to dispose of the other three-fourths. The court refused to supply by implication words appropriate to give one-fourth to each of the other sons. The fact that these provisions are in the codicil does not, I think, affect the construction to be given thereto. The testatrix had attempted to dispose of the remainders *by the will* by giving an undivided two-fifths thereof to the St. Joseph's Home for Aged Females, which the will states was under the charge of the Sisters of Charity of St. Vincent de Paul; and, therefore, that devise is the same, in effect, as the devise in the codicil to the corporation known as the Sisters of Charity of St. Vincent de Paul for the use

and benefit of said home, by giving another fifth to St. Vincent's Hospital, which likewise was stated to be under the charge of the Sisters of Charity, and, therefore, the effect of the change with respect to that fifth is to direct that the corporation should use it for the benefit of the home instead of the hospital; and by giving the other two-fifths to the Roman Catholic Orphan Asylum. Thus by the codicil she eliminated the hospital and gave the fifth for the use of the home under the same management. The controversy with respect to whether these remainders have been validly devised under the codicil or pass under the will is between two charitable institutions of the same religious denomination and virtually relates to two-fifths only of the remainder. The reasonable inference is, I think, that the testatrix changed her mind after making the codicil and decided to devise all the remainders for the benefit of the home to which she had given two-fifths thereof by the will; and if so, all devises of remainders by the will were necessarily revoked by implication. (*Van Nostrand* v. *Moore*, 52 N. Y. 12.) I am, therefore, of opinion that the learned surrogate was right in sustaining the validity of the codicil, and if so, no other point is presented for decision. The heirs only have appealed from the allowance to Cuvillier as special guardian; but if the remainder passes under the will or codicil, they have no interest in the estate.

Appellant Hamersley was appointed special guardian to represent certain infant heirs and incompetent heirs in the accounting proceeding, and appellant Cuvillier was appointed special guardian of the same heirs in the proceeding for the construction of the will. It would seem that the same special guardian should have been appointed in each proceeding; and since that was not done, one of the special guardians should have been discharged when the proceedings were consolidated. Failure to do that has led to an appeal by each of the special guardians, notwithstanding the fact that the appeal presents no points with respect to the accounting excepting those which depend on the validity and construction of the will, and the *cestuis qui trust* have no interest unless the testatrix dies intestate with respect to some or all of the remainders in the real property. But if any of the trusts attempted to be created by the will and codicil should be held to be invalid, then other questions, which arose on the accounting, involving the application of the Statutes of Limitations, would require consideration. In the circumstances, therefore, it cannot be said that the appeal by the special guardians or by either of them was unwarranted.

It follows that the decree should be affirmed, with separate bills

of costs to the respondents separately appearing and to each of the special guardians, payable out of the estate.

CLARKE, P. J., SMITH and MERRELL, JJ., concur; GREENBAUM, J., dissents.

Decree affirmed, with separate bills of costs to the respondents separately appearing and to each of the special guardians, payable out of the estate.