In the Matter of the Estate of EMMA M. WILLIAMS, Deceased.

Surrogate's Court, Suffolk County, November 12, 1931.

*Coombs & Wilson [C. W. Wilson* of counsel], for John E. Jennings and others.

*Frank P. Nohowel,* for the executor.

*Henry Escher,* for Elise La Chappelle.

*Katz & Sommereich [Frederick L. Cramer* of counsel], for Herman Schmidt, administrator of Louise Stein.

PELLETREAU, S.   In this matter John E. Jennings, William N. Jennings, Jr., Mary B. Jones, Francis B. Jennings and Ruth H. Jennings Anderson, being the five children of Tusie Williams Jennings, assert a claim and seek a construction of the will of Emma M. Williams.

The decedent went to the South Side Hospital at Bayshore late in the afternoon on Sunday, November 13, 1927.   At the time that she was admitted to the hospital she was in considerable pain and was running a temperature of about 102, and she was advised that it would be necessary for her to have an operation immediately.

The decedent indicated to the superintendent of the hospital, Miss Collins, that she wanted to leave something to some children, and requested the superintendent to send for William H. Robbins, with whom she was acquainted, and who had done some business for her, and who had been a practicing attorney at Bayshore for many years.

Mr. Robbins went to the hospital and obtained from Mrs. Williams the provisions which she wished him to insert in her will. He made a lead pencil memorandum of these provisions on a blank form of will, which was offered and received in evidence.   This memorandum shows that the decedent desired to make certain bequests, and to devise her home to her sister, and to place all of the balance of her property in trust for her husband, Edward M. Williams, during his lifetime.   Mr. Robbins then made this memorandum of the further instructions of the decedent: " The bal. 1000 each to the 5 children of Tusie Williams, cousin of my husband. Rest between Louisa Stein and my niece Eliza Lachappell, Switzerland."

After receiving these directions, Mr. Robbins left the hospital and went to his office and dictated the will in accordance with the instructions which had been received by him, and as soon as the will was typewritten he hurried back to the hospital with it, without

taking the precaution of reading it. He went to the room occupied by Mrs. Williams, who was still in considerable pain and still running a high temperature, and had the will executed by her. She died six days thereafter.

Mr. Robbins testified that Mrs. Williams never changed the original instructions which she gave to him for the preparation of the will, and Mr. Robbins presented the will for execution to Mrs. Williams, believing that it correctly carried out those instructions, but as a matter of fact the 6th clause of the will as executed reads as follows:

" *Sixth.* Upon the death of my said husband, I direct my trustees to pay to each of the children of my husband's cousin, Tusie Williams Jennings, and the balance thereof remaining, I direct one-half thereof be paid my sister, Louisa Stein, and the other one-half to my niece, Eliza Lachappell, of Switzerland."

Mr. Robbins testified that Mrs. Williams was a very sick woman, and that he considered that time was a very important element. There was no evidence that the will was read word for word to Mrs. Williams, but Mr. Robbins testified that he felt sure that it could not have been read, in view of the obvious omission of the amount of the gift to the five children. In fact Mr. Robbins frankly and fairly admitted that the omission of the amount of the legacy to each of these children was due solely and entirely to his own mistake.

The evidence as to the intention of the testatrix stands absolutely undisputed. This evidence is not only persuasive, but is absolutely conclusive. No one even questions the fact that it was the intention of the decedent to leave $1,000 to each of the five children of her husband's cousin, Tusie Williams Jennings.

The sole contention in this case is that there is some technical rule of law which serves to frustrate the intention of this decedent.

In the construction of wills the real purpose of the court is to ascertain and carry out the intention of the decedent.

A gift may be implied from the language found in the will and extrinsic evidence may be introduced to aid the court in interpreting the language of the will so as to carry out the real intention of the decedent. (*Matter of Stanton,* 230 App. Div. 574; *Matter of McGeehan,* 200 id. 739; affd., 237 N. Y. 575, without opinion; *Matter of Patterson,* 139 Misc. 872; *Matter of Kavanagh,* 133 id. 399; *Matter of Smith,* 254 N. Y. 283.)

In the will of this decedent she directs " my trustees to pay," and she then provides that " the balance thereof remaining " be divided between her sister and her niece. No one can read these words and resist the conclusion that the decedent intended to pay

something, and it follows as a matter of course that there could be no balance remaining until something had been paid. We, therefore, have clearly a gift by implication from the language of the will itself, and it needs only the extrinsic evidence to show the amount of the gift, in order to carry out the clear and unmistakable intention of the decedent.

It seems that we have in this case the identical situation which was before the court in *Matter of Stanton* (230 App. Div. 574). The clause of the will which was then before the surrogate for construction read as follows: " 'Also one half ($\frac{1}{2}$) of my half ($\frac{1}{2}$) to go to Mabel and Betty Randall, equal.' "

We thus see that the actual subject of the gift was omitted, as in this case, but the court in that case permitted the introduction of extrinsic evidence to show that the decedent owned one-half of the outstanding stock of the Randall Grape Juice Company, and held that one-half of this stock should be divided between the two claimants, Mabel and Betty Randall, saying (on p. 576): " That gifts, by will, may arise by implication has been held many times, although, concededly, caution must be exercised in supplying missing words in an attempt to effectuate testator's intention. It was said in *Post* v. *Hover* (33 N. Y. 593, 599): ' To devise an estate by implication, there must be such a strong probabiity of an intention to give one, that the contrary cannot be supposed.' And this language is taken from the opinion in *Bradhurst* v. *Field* (135 N. Y. 564, 568): ' To uphold a legacy by implication, the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference.' "

It is important to note that in *Matter of Stanton* the court expressly distinguishes the case of *Dreyer* v. *Reisman* (202 N. Y. 476), upon which the residuary legatees rely in this case, on the ground that in the *Dreyer* case no extrinsic evidence was produced to aid in discovering the testator's intention.

In *Matter of McGeehan* (200 App. Div. 739; affd., 237 N. Y. 575, without opinion) the will of the decedent, after setting up certain trusts for certain beneficiaries during their lives, provided: "After their deaths, I give, bequeath and devise to ' The Sisters of Charity of the St. Vincent de Paul.' "

Here again we see that the subject of the gift is omitted, and the court found that a gift of the remainders was to be implied from the provisions of the will.

In the case at bar there is clearly a gift by implication, and we need only the extrinsic evidence which was introduced to show the gift which the decedent intended to make to the beneficiaries named

by her. This evidence was clearly admissible under the recent authorities.

In *Matter of Patterson* (139 Misc. 872) Surrogate WINGATE, in passing upon the objection to the admissibility of extrinsic evidence to aid in the interpretation of the will then before the court, said (on p. 875): " Under the old rule it is quite possible that the court might have been obliged to rule that this objection was valid, but it is now well established that ' " with the exception of direct statements of intention, no extrinsic fact relevant to any legitimate question arising in the interpretation of writings and admissible under the general rules of evidence " can be shut out.' (*Matter of Smith*, 254 N. Y. 283, 289; *Matter of Shumway*, 138 Misc. 429, 432.) "

In *Matter of Kavanagh* (133 Misc. 399), where the decedent gave to his wife " all my *personal* property wherever situated of whatever nature the same consists of " and " all money remaining to my credit in any bank or banks or which may be due me from any notes or bonds or mortgages," the surrogate held that the decedent intended by the use of this language to give to his wife all of the property that he personally owned, which would include not only his personal property but *also his real property*, and in that case Surrogate SCHULZ says (on p. 403): " It is well settled that the intent of the testator should be given effect if this is possible in view of the language used, and it has been held that to effectuate such intent, words may be supplied, omitted or transposed. (*Matter of McGeehan*, 200 App. Div. 739, 747; affd., 237 N. Y. 575; *Dreyer* v. *Reisman*, 202 id. 476, 480; *Phillips* v. *Davies*, 92 id. 199, 204; *Matter of Kenny*, 224 App. Div. 152, 156.) "

In the recent case of *Matter of Smith* (254 N. Y. 283), decided by the Court of Appeals in July of last year, we find that the decedent made a will in the State of New York on August 28, 1911, and then made a will in the State of Florida on March 22, 1924, in which were printed the words, " hereby revoking all former Wills by me made." In view of all of the circumstances in that case the court found that it was not the intention of the testatrix by the use of these words to revoke the will which was made by her in the State of New York on August 28, 1911, and concerning the question of the introduction of extrinsic evidence to aid in the interpretation of wills, Judge KELLOGG, writing for the court, says: " It is the modern rule that ' with the exception of direct statements of intention, no extrinsic fact relevant to any legitimate question arising :n the interpretation of writings and admissible under the general rules of evidence ' can be shut out."

I, therefore, conclude that under these authorities there was a

gift to the five children of Tusie Williams Jennings under the express terms of the will, that extrinsic evidence was properly received to show the amount of this gift, for the purpose of arriving at and carrying out the intention of the decedent and that the five children of the said Tusie Williams Jennings are entitled to an order directing the payment to each of them of the sum of $1,000.

Submit decree.