In the Matter of the Estate of FLORENCE LOOMIS BROWN, Deceased.

Surrogate's Court, Oneida County, August 2, 1937.

*Earl H. Gale,* personally as administrator and as attorney for the administrators *c. t. a.,* etc., of Florence Loomis Brown, deceased.

*Dunmore, Ferris, Hughes & Dorrance,* for the First Citizens Bank and Trust Company.

*E. Earl Jones,* for R. May Jones.

*Fuller, Brown, Hubbard & Felt,* for Middlebury College.

*Bond, Schoeneck & King,* for Syracuse University.

MORRIS, S. The administrators *c. t. a.* have requested a construction of the will of the decedent with reference to a trust or trusts set up in paragraphs seventh and eighth of the will. They have also raised a question as to whether or not the gifts to charity have violated section 17 of the Decedent Estate Law, which section limits a testator in devising more than one-half of his estate, after the payment of his debts, to charity, upon proper objection.

By the seventh paragraph of her will the decedent devised to the Citizens Trust Company of Utica, in trust, the residue of her estate, giving to the trustee certain powers and directions with reference to its management. She refers to " the trust," a point viewed as significant by the husband and his attorney, and in paragraph eighth proceeds to set up the trust as follows:

" *Eighth.* It is my will that my said trustee shall disburse the net income arising from said trust fund as often as may be convenient, but at least quarterly, as follows: Four-tenths thereof to my said husband, Frederick R. Brown, during the term of his natural life, to which shall be added the income arising from the sum received from the sale of my said automobile; one-tenth thereof to the said Rhoda May Jones, during the term of her natural life; one-tenth thereof to said Hilda Smith, during the term of her natural life; one-tenth thereof to Mollie Howell Lambert of Painted Post, New York, during the term of her natural life; one-tenth thereof to Thyrza McClure of North High School, Minneapolis, Minn., during the term of her natural life; one-tenth thereof to Harriet S. Brown, of 1426 McCollum St. Los

Angeles, California, during the term of her natural life; one-tenth thereof to Minnie Pierce Cole of Bath, New York, during the term of her natural life.

" It is my further will that upon the death of the respective persons mentioned above, the interest of each person respectively in and to said trust fund shall be distributed as follows:

" That on the death of my husband, Frederick R. Brown four-tenths of the principal of said trust fund, together with any income accruing thereon, and also the amount held by said trustee derived from the proceeds of the sale of any automobile owned by me at the time of my death, together with any income accrued thereon, shall forthwith be paid by my said trustee to Syracuse University, New York; upon the death of said Rhoda May Jones, that one-tenth of said trust fund, together with any income accrued thereon, shall be forthwith distributed to Middlebury College, of Middlebury, Vermont; upon the death of said Hilda Smith, that one-tenth of said trust fund, together with any income accrued thereon, shall be forthwith distributed to Middlebury College, of Middlebury, Vermont; upon the death of Mollie H. Lambert, that one-tenth of said trust fund, together with any income accrued thereon, shall be forthwith distributed to Northfield Seminary. of East Northfield, Massachusetts; upon the death. of Thyrza McClure, that one-tenth of said trust fund, together with any income accrued thereon, shall be forthwith distributed to Northfield Seminary, of East Northfield, Massachusetts; upon the death of Harriet S. Brown, that one-tenth of said trust fund, together with any income accrued thereon, shall be forthwith distributed to Northfield Seminary, of East Northfield, Massachusetts; upon the death of Minnie Pierce Cole, that one-tenth of said trust fund, together with any income accrued thereon, shall be forthwith paid to Sterling Cole, if living at said time, otherwise to Robert Cole."

The testator follows these provisions, with which we are primarily concerned, with other matters not directly at issue in this proceeding. It will be noted that the original approach by the testator in this trust is concerning the matter of income and not the disposition of the principal. She splits the net income from the trust fund into tenths, giving the same to seven beneficiaries for life, all except the husband receiving one-tenth of the " net income of said trust " for life. He received four-tenths for life. It would greatly strengthen the position of the husband if we should stop at that point in the testator's unraveling of her scheme for disposing of her property. At this point we may well say that testator's intentions appear to conceive a single undivided trust fund. However, when she comes to the question of remainders later on

in this provision, although in the first part the will directs the formation of " a trust," and that the various tenths into which it was directed to be divided as to income, she so connects the original income division with the subsequently mentioned principal divisions that it is clear that she refers to a division of the principal of the trust fund from its very inception; for instance, she directs that upon the death of one of the life tenants, Rhoda May Jones, to whom she had granted one-tenth of the net income from the trust fund, upon said Jones' death that one-tenth shall go to Middlebury College. She designated it as " *that* one-tenth of said trust fund," and so on with all of the other five trust divisions she particularizes them as " *that* one-tenth of said trust fund," clearly indicating an intention of a separate trust for the respective life beneficiaries, with a remainder over on the death of each of them, respectively, to a named remainderman. It will also be noted that in the second paragraph of the eighth clause of the will testator specifically says " it is my further will that upon the death of the respective persons mentioned above, *the interest of each person respectively* in and to said trust fund shall be distributed as follows:" Clearly we have here an attempt to individualize each gift during its entire existence. It seems clear to me that the reasonable interpretation of the term " interest " as used in this provision is identical with " share."

As was so clearly stated by Judge CARDOZO, in *Matter of Horner* (237 N. Y. 489): " If the dominant purpose in the creation of the trust is that of division into separate shares terminable by separate minorities or lives, the trust to that extent may be upheld, even though in some other contingency it is to be illegally prolonged (*Matter of Colegrove*, 221 N. Y. 455). We must say whether unity or pluralism is the preponderating note. The choice at best is between two obscurities, and yet the stress, it would seem, is upon shares into which an aggregate is conceived of as at least constructively divided, and not upon an aggregate in which shares have been submerged."

The authorities seem to follow this reasoning generally. (*Vanderpoel* v. *Loew*, 112 N. Y. 167; *Matter of McGeehan*. 200 App. Div. 739; Jessup-Redfield Law & Practice in the Surrogates' Courts, vol. 1, p. 908.)

I construe the provision to set up a trust *in solido* for convenience only, and that the various divisions are separate trusts for the separate lives in each, and are, therefore, not a violation of the rule enacted in section 11 of the Personal Property Law.

On the question as to whether, upon the objection of the surviving husband, the testator has by her gifts to charitable cor-

porations exceeded the amount so allowed by section 17 of the Decedent Estate Law, the rule is that the gross estate left by the testator as of the date of death minus debts existing at the time of death leaves a balance, one-half of which is all that may be bequeathed to charity. (See note of Commission under this section.) In this particular case there are intervening life estates and trusts which must be taken into consideration in arriving at the value of the remainders, that is the charitable remainders, as of the date of death. Although the attorneys have computed the value of the life estates on slightly different bases, the entire value of the life estates is in the neighborhood of $2,221.63.

The value of the gross estate at death was $7,687.14, from which, of course, should be deducted the husband's exemption of $300 and the debts of $183.93. The balance of $7,203.21 represented the total estate, subject to calculating the charitable gift, which should not exceed $3,601.61.

Subtracting the aforementioned sum of $2,221.63, the entire value of the life estates, from $4,337.08, which represents the total value of the residuary estate at the time of accounting, leaves a balance of $2,115.45 as the actual present value to the charitable beneficiaries. One-half of the net estate available for charities being in excess of $3,601.61, and there being only $2,115.45 therefor, it seems by mathematical computation that the statute has not been violated, and I so hold.

Decreed accordingly.